[No. E027043. Fourth Dist., Div. Two. June 8, 2001.]

SAN BERNARDINO VALLEY AUDUBON SOCIETY, Plaintiff and Appellant, v.
METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA et al., Defendants and Respondents;
RIVERSIDE COUNTY HABITAT CONSERVATION AGENCY, Real Party in Interest and Respondent.

1098

COUNSEL

Johnson & Sedlack, Raymond W. Johnson and Carl T. Sedlack for Plaintiff and Appellant.

Roderick E. Walston, Norman N. Flette and John C. Clairday for Defendant and Respondent Metropolitan Water District of Southern California.

Bill Lockyer, Attorney General, and William S. Abbey, Deputy Attorney General, for Defendant and Respondent California Department of Fish and Game.

Best, Best & Krieger, Michelle Ouellette and Theresa E. Antonucci for Real Party in Interest and Respondent.

## OPINION

**HOLLENHORST, J.**—In *San Bernardino Valley Audubon Society v. Metropolitan Water Dist.* (1999) 71 Cal.App.4th 382 [83 Cal.Rptr.2d 836], we reversed a trial court judgment which approved a mitigated negative declaration for a project consisting of the adoption of the Lake Mathews Multiple Species Habitat Conservation Plan and Natural Community Conservation Plan (MSHCP/NCCP or Project). We found that the record contained substantial evidence to support a fair argument that the Project may have a significant effect on the environment. We therefore concluded that the California Environmental Quality Act (CEQA) required the preparation of an environmental impact report (EIR).

On remand, the trial court reconsidered the matter and entered judgment granting the peremptory writ of mandate on January 20, 2000. It also issued a peremptory writ of mandate which was filed simultaneously.

The peremptory writ of mandate ordered respondent Metropolitan Water District of Southern California to set aside its resolution adopting a mitigated negative declaration for the Project. It also ordered respondent Metropolitan Water District and respondent California Department of Fish and Game to "cease issuance of any mitigation credits from the Mitigation Bank established by the Lake Mathews MSHCP/NCCP for the take of any state-listed

candidate, threatened, or endangered species and cancel or void any credits previously issued unless and until either an environmental impact report has been prepared, certified, and approved in compliance with the California Environmental Quality Act (CEQA), or Respondents have determined to permanently cease issuing mitigation credits out of the Mitigation Bank for the take of state-listed candidates, threatened and endangered species." The writ further ordered that, except as provided above, the court does not direct the agencies to exercise their discretion in any particular way.

The Audubon Society moved for reconsideration, arguing that the writ should also void permits previously issued under the negative declaration. Audubon contended that Metropolitan was proceeding to clear large areas of potential habitat at Lake Mathews in apparent reliance upon permits issued without the preparation of an EIR. The motion was denied, and Audubon Society then filed this appeal.

On appeal, Audubon contends that the peremptory writ provision quoted above is far too narrow. It argues that there have been 17 approvals based on the negative declaration that was invalidated, but that the trial court only required cancellation of one of those approvals, the issuance of mitigation credits for the take of state-listed threatened or endangered species. As a result, Audubon contends that Metropolitan is proceeding with other discretionary actions which were based upon the void negative declaration without the preparation of the required EIR. Audubon concedes, however, that this court cannot invalidate the incidental take permit issued under section 10A of the federal Endangered Species Act (16 U.S.C. § 1531 et seq.), even though that permit was based on the MSHCP/NCCP.

Audubon concludes that the trial court erred in allowing the MSHCP/NCCP to stand without requiring an EIR, even though it also ordered Metropolitan to set aside its resolution adopting a mitigated negative declaration. It asks us to instruct the trial court to issue a writ which invalidates the entire Project, i.e., all of the discretionary actions which were based on the negative declaration which we previously invalidated.

Respondents rely on Public Resources Code section 21168.9, which describes the alternative orders the trial court may make upon a finding of CEQA noncompliance.[1] Respondents contend that the trial court's order complies with that section because it includes only the specific project activities which are not in compliance with CEQA.

---

[1] Unless otherwise indicated, all further statutory references are to the Public Resources Code.

RESPONDENTS' INTERPRETATION OF OUR PRIOR DECISION

As noted above, our prior decision held that CEQA requires the preparation of an EIR for the Project. A mitigated negative declaration was held to be insufficient because there was substantial evidence in the administrative record to support a fair argument that the Project may have a significant impact on the environment. Since the mitigated negative declaration was insufficient, we held that "the proper procedure for such a far-reaching project is to prepare an EIR, with the requisite public participation, and to approve it only after making appropriate findings that changes have been made which mitigate or avoid the significant effects on the environment. [Citation.]" (*San Bernardino Valley Audubon Society v. Metropolitan Water Dist., supra,* 71 Cal.App.4th 382, 402.)

Under the opinion, respondent Metropolitan Water District had to decide whether to proceed to prepare a full EIR for the Project, or whether to abandon the Project. It did neither. Instead, Metropolitan and the other respondents argue that "[t]he Mitigation Bank is a distinct, severable part of the Plan and the only Plan component that this Court found could result in significant environmental impacts." (Original underscoring.) Further, they argue that "the only part of the Plan this Court directly addressed in its previous opinion was use of the Mitigation Bank."

Respondents therefore seek to segregate the mitigation bank by arguing that "the other parts of the Plan stand separate from and are not dependent on the Mitigation Bank." Finally, respondents argue that "[t]his Court recognized that the only environmental effect over which this Court had jurisdiction would be use of the Mitigation Bank for the take of state-listed species for the Plan Area Projects and Outside Projects. [Citation.] This Court never addressed other effects any of the Management Functions, Plan Area Projects or Outside Projects might have." Since the trial court addressed the take of state-listed species in the peremptory writ, respondents conclude that the trial court properly addressed the only significant environmental effect of the Project.

Respondents' position is based upon a misreading of our prior opinion. In that opinion, we adopted the definition of the Project contained in the mitigated negative declaration: "The project consists of the adoption of the Lake Mathews Multiple Species Habitat Conservation Plan and Natural Community Conservation Plan . . . ." (*San Bernardino Valley Audubon Society v. Metropolitan Water Dist., supra,* 71 Cal.App.4th 382, 386.) We then described the Project in some detail, quoting from the relevant documents in the administrative record. (*Id.* at pp. 386-389.) We also examined

the potential impacts of the Project, as defined, and concluded that Audubon had "a fair argument that the Project will have significant environmental effects and that the proposed mitigation measures are inadequate to mitigate those effects into insignificance." (*Id.* at p. 391.)

Although the fair argument issues centered upon operation of the proposed mitigation measures, they were by no means limited to the operation of the mitigation bank. We noted that "[t]he mitigated negative declaration also discusses other mitigation measures under three categories: (1) operations and plan area projects; (2) outside projects; and (3) projects and activities in the multiple species reserve." (*San Bernardino Valley Audubon Society v. Metropolitan Water Dist., supra,* 71 Cal.App.4th 382, 393.) We discussed these categories, and the adequacy of the proposed mitigation measures. (*Id.* at pp. 393-400.) We concluded that there was "sufficient evidence in the record to support a fair argument that the Project, including establishment of the mitigation bank, may have a potentially significant effect on the environment." (*Id.* at p. 400.)

We therefore reject respondents' contention that our prior opinion held that "the only environmental effect over which this Court had jurisdiction would be use of the Mitigation Bank for the take of state-listed species for the Plan Area Projects and Outside Projects." Instead, after applying the fair argument test, we merely held that preparation of an EIR for the Project was required. We specifically noted: "By limiting our discussion to the specific aspects of the Project which were challenged by Audubon, we do not mean to suggest that an EIR can or should be limited to, or focused on, those aspects. To the contrary, a full EIR should be prepared in accordance with the definition in section 21061. [Citation.]" (*San Bernardino Valley Audubon Society v. Metropolitan Water Dist., supra,* 71 Cal.App.4th 382, 402, fn. 11.)

### APPLICATION OF SECTION 21168.9

 Respondents' primary argument is that the trial court's judgment was proper under section 21168.9. That section provides alternative remedies which allow the trial court to tailor the remedy to fit the violation.[2] In other words, "When a court finds that a public agency failed to

---

[2]Section 21168.9 provides: "(a) If a court finds, as a result of a trial, hearing, or remand from an appellate court, that any determination, finding, or decision of a public agency has been made without compliance with this division, the court shall enter an order that includes one or more of the following: [¶] (1) A mandate that the determination, finding, or decision be voided by the public agency, in whole or in part. [¶] (2) If the court finds that a specific project activity or activities will prejudice the consideration or implementation of particular mitigation measures or alternatives to the project, a mandate that the public agency and any

comply with CEQA, it must do one or more of the following: (1) mandate that the agency vacate the determination, finding, or decision in whole or in part; (2) if the court finds that a specific project activity will prejudice the consideration or implementation of mitigation measures or project alternatives and could result in an adverse physical environmental change, mandate that the agency and any real party in interest suspend specific activity until the agency complies with CEQA; (3) mandate that the agency take specific action necessary to comply with CEQA. (§ 21168.9, subd. (a).) The court must specify what action by the agency is necessary to comply with CEQA (§ 21168.9, subd. (b)) but cannot direct the agency to exercise its discretion in a particular way (§ 21168.9, subd. (c))." (*Federation of Hillside & Canyon Associations v. City of Los Angeles* (2000) 83 Cal.App.4th 1252, 1266 [100 Cal.Rptr.2d 301].)

Public Resources Code section 21168.9 is a specific application of the general rule contained in Code of Civil Procedure section 1094.5, subdivision (f): "The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specifically enjoined upon it by law, but the judgment shall not limit or control in any way the discretion legally vested in the respondent."

Section 21168.9 was enacted in 1984 to give the trial courts some flexibility in tailoring a remedy to fit a specific CEQA violation. (Stats.

---

real parties in interest suspend any or all specific project activity or activities, pursuant to the determination, finding, or decision that could result in an adverse change or alteration to the physical environment, until the public agency has taken any actions that may be necessary to bring the determination, finding, or decision into compliance with this division. [¶] (3) A mandate that the public agency take specific action as may be necessary to bring the determination, finding, or decision into compliance with this division. [¶] (b) Any order pursuant to subdivision (a) shall include only those mandates which are necessary to achieve compliance with this division and only those specific project activities in noncompliance with this division. The order shall be made by the issuance of a peremptory writ of mandate specifying what action by the public agency is necessary to comply with this division. However, the order shall be limited to that portion of a determination, finding, or decision or the specific project activity or activities found to be in noncompliance only if a court finds that (1) the portion or specific project activity or activities are severable, (2) severance will not prejudice complete and full compliance with this division, and (3) the court has not found the remainder of the project to be in noncompliance with this division. The trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division. [¶] (c) Nothing in this section authorizes a court to direct any public agency to exercise its discretion in any particular way. Except as expressly provided in this section, nothing in this section is intended to limit the equitable powers of the court."

1984, ch. 1213, § 1, pp. 4161-4162; see generally 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2000) Judicial Review, §§ 23.119 to 23.121, pp. 1031-1036.) It was first interpreted by our Supreme Court in *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376 [253 Cal.Rptr. 426, 764 P.2d 278]. In that case, the court held that an EIR for the construction of biomedical research facilities at the University of California campus in San Francisco was inadequate. (*Id.* at pp. 387-388.) One issue presented was whether the university should be allowed to continue construction pending certification of a proper EIR. The court said: "Section 21168.9 grants us the authority to stay all activity at Laurel Heights until the Regents certify a proper EIR. The question is whether we should do so. [¶] Because CEQA does not require us to enjoin the present activity, we rely on traditional equitable principles in deciding whether injunctive relief is appropriate." (47 Cal.3d at p. 423.) The court held that the university could continue operations that had already begun, but could not expand operations or begin additional operations until a new EIR was certified. (*Id.* at p. 424.) The court noted the trial court's continuing jurisdiction and stated: "We can reasonably assume the Association and the trial court will closely monitor the Regents' progress in complying with our decision. Such oversight is an additional assurance a new EIR will be completed without undue delay. Should it become clear, however, that the Regents cannot or will not prepare and certify a legally adequate EIR and that compliance with CEQA will not be promptly forthcoming, the trial court can reconsider the question of whether equitable relief terminating operations at Laurel Heights is then appropriate." (*Ibid.*, fn. omitted; see also Glad, *Laurel Heights Improvement Association of San Francisco, Inc. v. Regents of the University of California: The Lucas Court's First Look at CEQA* (1991) 22 Pacific L.J. 289, 315-317.)

Section 21168.9 thus gives trial courts the option to void the finding of the agency (§ 21168.9, subd. (a)(1)), or to order a lesser remedy which suspends a specific project activity which could cause an adverse change in the environment (§ 21168.9, subd. (a)(2)), or to order specific action needed to bring the agency's action into compliance with CEQA (§ 21168.9, subd. (a)(3)). The choice of a lesser remedy involves the trial court's consideration of equitable principles. (*Laurel Heights Improvement Assn. v. Regents of University of California, supra,* 47 Cal.3d 376, 423-425; *Ultramar, Inc. v. South Coast Air Quality Management Dist.* (1993) 17 Cal.App.4th 689, 705 [21 Cal.Rptr.2d 608]; *City of Santee v. County of San Diego* (1989) 214 Cal.App.3d 1438, 1456 [263 Cal.Rptr. 340].)

The 1993 amendments to section 21168.9 expanded the trial court's authority and "expressly authorized the court to fashion a remedy that

permits some part of the project to go forward while an agency seeks to remedy its CEQA violations. In other words, the issuance of a writ need not always halt all work on a project." (Remy et al., Guide to the Cal. Environmental Quality Act (10th ed. 1999) p. 647.)

Under the current version of section 21168.9, subdivision (a), the trial court may allow a portion of the work to proceed while the agency is complying with CEQA. Under subdivision (a)(1), the trial court may void the action of the public agency in whole or in part. In this case, the trial court voided the negative declaration for the project. Under subdivision (a)(2), the trial court may suspend specific project activity that may damage the environment until the agency has taken actions that are necessary to comply with CEQA. In this case, if the trial court elected to suspend certain actions, it could only do so until an EIR was certified. Under subdivision (a)(3), the trial court may take specific actions necessary to bring the agency's action into compliance with CEQA. In this case, that means that the trial court could order preparation of an EIR if the agency elects to proceed with the Project.

Section 21168.9, subdivision (b) currently provides: "The order shall be made by the issuance of a peremptory writ of mandate specifying what action by the public agency is necessary to comply with this division." The appropriate order here is therefore an order that the respondents prepare an EIR for the Project. (*Sierra Club v. Contra Costa County* (1992) 10 Cal.App.4th 1212, 1225 [13 Cal.Rptr.2d 182].) Although Project activities may be suspended "until the public agency has taken any actions that may be necessary to bring the determination, finding, or decision into compliance with this division" (§ 21168.9, subd. (a)(2)), subdivision (b) requires that "[t]he trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division." (§ 21168.9, subd. (b); *Endangered Habitats League, Inc. v. State Water Resources Control Bd.* (1997) 63 Cal.App.4th 227, 243-245 [73 Cal.Rptr.2d 388].)

Respondents rely on the severability provisions of section 21168.9, subdivision (b). Specifically, they rely on the provision which states that an order "shall include only those mandates which are necessary to achieve compliance with this division and only those specific project activities in noncompliance with this division." Subdivision (b) also provides that the order shall be limited to those activities in noncompliance "only if a court finds that (1) the portion or specific project activity or activities are severable, (2) severance will not prejudice complete and full compliance with this

division, and (3) the court has not found the remainder of the project to be in noncompliance with this division."

Respondents contend that "all of the other parts of the Plan stand separate from and are not dependent on the Mitigation Bank." They allege facts regarding various components of the Project in support of their argument that the mitigation bank is a distinct and severable part of the plan.

The difficulty with respondents' severability argument is that the trial court did not consider or make any findings under section 21168.9, subdivision (b). The trial court did not even mention section 21168.9 in announcing its decision, even though respondents had argued that the section was applicable. Thus, the trial court did not consider whether the mitigation bank was severable, it did not consider whether severance would prejudice full compliance with CEQA requirements, and it did not find that the rest of the Project was or was not in compliance with CEQA.

Respondents want us to make these findings for them by approving the trial court's determination that the only order needed was an order to cease issuance of mitigation credits for the take of certain state-listed species. They also seek to advance their severability argument by contending that the projects they characterize as plan area projects and outside projects "already have or will have valid, individual environmental documents which will stand separately from the mitigated negative declaration."[3] They contend that other projects were mentioned in the mitigated negative declaration only because they planned to use the mitigation bank to satisfy their own mitigation requirements. They also argue that the Project as a whole was intended to have beneficial environmental effects, and that cessation of the entire project would therefore be counterproductive.

Respondents accuse Audubon of attempting to use this case as a vehicle to stop or relitigate those other projects, including projects in which other agencies were the lead agencies. Finally, they argue that Audubon is improperly attempting to invalidate the federal and state incidental take permits despite our prior rejection of its arguments. (*San Bernardino Valley Audubon Society v. Metropolitan Water Dist., supra,* 71 Cal.App.4th 382, 390-392, 402-404.)

---

[3]Respondents also argue that "the inability to use the Mitigation Bank as mitigation for the take of state-listed species does not automatically invalidate the environmental review for any Management Functions, Plan Area Projects or Outside Project. A public agency may change mitigation measures after a project has been approved without triggering the need for a further EIR as long as such changes will not lead to new significant environmental effects. [Citations.]" This argument overlooks the fact that no EIR has ever been approved for the Project.

Audubon, on the other hand, argues that "[w]hile the [original] project description identified at least seventeen specific discretionary actions that were based upon the voided Negative Declaration the [trial] court only required that a portion of one of the seventeen project components be voided." It requests that we "issue a writ that requires Respondents to set aside all discretionary actions[] based upon the Negative Declaration that was invalidated, other than those items which Petitioner agrees are severable and will not impact the environment."

In effect, these arguments, and Audubon's counterarguments, ask us to either apply section 21168.9 to approve the trial court's action, or to make our own allocation between complying and noncomplying project activities. We decline to do so and conclude that any such allocation should more properly be made by the trial court.

However, we do agree with Audubon that the primary defect in the trial court's judgment and peremptory writ is its failure to require CEQA compliance. In other words, the trial court invalidated only one part of the Project, the issuance of mitigation credits for the take of certain state-listed species, without requiring the completion of an EIR for the Project. The effect of the trial court decision is to allow the entire Project (with the single exception of mitigation credits for the take of certain state-listed species) to proceed without any environmental review whatsoever.

Despite our prior determination that a full EIR was required for the Project, the trial court's judgment and writ did not specifically require CEQA compliance for the Project. Instead, the trial court merely ordered the cessation of the issuance of certain mitigation credits until an EIR was prepared, or the respondent decided to permanently cease issuance of such credits.

We therefore conclude the trial court erred in failing to require preparation of a full EIR for the Project.[4] (Cf. *Federation of Hillside & Canyon Associations v. City of Los Angeles, supra,* 83 Cal.App.4th 1252, 1266 ["The court must specify what action by the agency is necessary to comply with CEQA (§ 21168.9, subd. (b)) but cannot direct the agency to exercise its discretion in a particular way (§ 21168.9, subd. (c))"]; *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1124-1125 [71 Cal.Rptr.2d 1] [writ requiring preparation of a new EIR to replace

---

[4]We note, however, that the trial court's writ does provide: "This Court shall retain jurisdiction over Respondents by way of a Return to this Peremptory Writ of Mandate until the Court has determined that Respondents and each of them have complied with the provisions of CEQA."

defective EIR is proper]; *San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus* (1994) 27 Cal.App.4th 713, 742 [32 Cal.Rptr.2d 704] [injunction justified in view of grudging and pro forma compliance with CEQA]; *City of Santee v. County of San Diego, supra,* 214 Cal.App.3d 1438, 1456 ["The Board must begin anew the analytical process required under CEQA and must not attempt to give post hoc rationalizations for actions already taken in violation of CEQA, even if done in good faith."].)

In view of the arguments of the parties for application of the severability provisions of section 21168.9, we find it appropriate to remand the case to the trial court for consideration of the parties' arguments under that section, and for the making of appropriate findings.

### DISPOSITION

The judgment is reversed and the case is remanded for reconsideration in light of the views expressed herein. If, on remand, respondents seek to limit the peremptory writ of mandate to specific Project activities which are not in compliance with CEQA pursuant to section 21168.9, subdivision (b), the court shall consider and determine which specific Project activities are not in compliance with CEQA, and shall then make appropriate findings in accordance with section 21168.9, subdivision (b). If the agency decides to proceed with the Project, the trial court shall "retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with [CEQA]." (§ 21168.9, subd. (b).)

Audubon is to recover its costs on appeal.

Richli, J., and Gaut, J., concurred.