[No. F058451. Fifth Dist. Feb. 23, 2011.]

LANDVALUE 77, LLC, et al., Plaintiffs and Appellants, v.
BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY et al.,
Defendants and Respondents;
KASHIAN ENTERPRISES, L.P., Real Party in Interest and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*It is ordered that the opinion be certified for publication in the Official Reports with the exception of Facts, Proceedings, and parts I., II.D., II.E., and II.F. of Discussion.

676

## COUNSEL

Doyle & Schallert, David Douglas Doyle; Stoel Rives, Melissa A. Foster and Lee N. Smith for Plaintiffs and Appellants.

Crowell & Moring, Ethan P. Schulman, Margaret Dollbaum, Gregory D. Call and Nathanial J. Wood for Defendants and Respondents.

McDonough Holland & Allen; Best, Best & Krieger, Kimberly E. Hood and Harriet A. Steiner for Real Parties in Interest and Respondents.

## OPINION

**DAWSON, J.**—This appeal concerns a mixed-use development project involving 45 acres of land located on the Fresno campus of the California State University. The development is known as the Campus Pointe project and is being completed by a private developer that subleased the land from an auxiliary organization of the university. The development plans include apartments for students, faculty, employees and seniors, offices and retail stores, a hotel, and a 14-screen movie theater.

Appellants sued, challenging the approval of the project. They alleged a university trustee violated a conflict of interest statute, and the project's environmental impact report (EIR) failed to comply with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).

The trial court found a conflict of interest prohibited by Government Code section 1090[1] and voided a theater sub-sublease between the developer and a trustee of the university. The trial court also concluded the final EIR inadequately analyzed environmental impacts involving (1) the water supply, (2) traffic and parking, and (3) air quality.

Appellants appealed, claiming the remedies imposed by the trial court were inadequate. Appellants contend the trial court should have remedied the conflict of interest by voiding the approval of the entire project, not just the theater sub-sublease. Appellants contend the provisions of CEQA required the trial court to (1) issue the peremptory writ required by its own judgment and CEQA, (2) issue an injunction to prevent the further construction of the project, and (3) mandate specific actions, such as completion of a traffic study, to address the shortcomings of the EIR identified in the trial court's written statement of decision.

We conclude that (1) the trial court was required by Public Resources Code section 21168.9 to issue a writ of mandate and (2) the judgment and writ of mandate should direct that the certification of the final EIR and the approvals of the project be set aside. The trial court did not, however, abuse its discretion in refusing to enjoin construction.

We also conclude that the violation of the conflict of interest prohibition in section 1090 did not require a broader remedy than imposed by the trial court.

The judgment is affirmed in part and reversed in part. The trial court shall modify the judgment and issue a writ of mandate in accordance with this opinion.

## FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## PROCEEDINGS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] All further statutory references shall be to the Government Code unless otherwise indicated.

*See footnote, *ante*, page 675.

## DISCUSSION

I.   *Conflicts of Interest and Remedies**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.   *CEQA and Returns of Writs*

A.   *Trial Court's Decision and Judgment*

The statement of decision included the trial court's analysis and determinations that certain CEQA violations had occurred. It discussed the remedies for those violations as follows:

"The Court has determined that there was inadequate traffic analysis, and in particular, failure to respond to comments made by the City of Fresno concerning the project's impact on traffic caused by the elimination of overflow parking for the Save Mart Center. The Court has also determined that there was a failure to adequately analyze the project's water issues. The Court has also determined that there was a failure to discuss the applicability of ISR 9510 [(San Joaquin Valley Air Pollution Control District's 'indirect source rule')].

"Upon entry of the judgment and issuance of the writ, Respondents should take action with respect to the comments concerning traffic, analyze water issues, and discuss the applicability of the [indirect source rule] in accordance with the court's opinion, and to revise the findings and recirculate for comment as necessary. The severance and consideration of these noncomplying aspects of the project should not prejudice complete and full compliance with CEQA. The court does not direct Respondents to exercise their discretion in any particular way. [Citation.]"

On the same day it filed its statement of decision, the trial court also filed a "Judgment Granting Peremptory Writ of Mandate." The judgment included the following orders:

"2. A peremptory writ of mandate directing Respondent to set aside, in part, the Resolution of the Board of Trustees Certifying the final Environmental Impact Report and Approval of the Campus Master Plan Revision and Amendment to the 2006–07 Non-State Capital Outlay Program for Campus Pointe at California State University, Fresno (RCPBG 05 07-10), and to reconsider its opinion and judgment, in light of this Court's accompanying

---

*See footnote, *ante*, page 675.

combined statement of decision, and to take such further action as is specially enjoined upon them by law, but the judgment does not limit or control in any way the discretion legally vested in the Respondents, as follows:

"(a) Respondents are to respond to the City of Fresno's comments concerning the project's impact on traffic caused by the elimination of overflow parking for the Save Mart Center.

"(b) Respondents are to revise its comments in its water supply analysis.

"(c) Respondents are to discuss the applicability of the San Joaquin Valley Unified [A]ir Pollution Control District rule 9510 to the project. [¶] . . . [¶]

"4. Respondent shall file a return to this peremptory writ of mandate within 120 days of service of the peremptory writ of mandate. The Court reserves jurisdiction to determine, by return to the peremptory writ of mandate, whether Respondent has taken those actions necessary to comply with the Court's order on petition for writ of mandate."

Despite the judgment's mention of a peremptory writ of mandate and the statement of decision's reference to the "issuance of the writ," an actual writ of mandate was not filed, issued, or served upon respondents before the notice of appeal was filed in early September 2009. Because an appeal was filed, respondents have not taken action to comply with the terms of the judgment. Their appellate brief acknowledges this fact: "It is now up to Respondents to complete that additional environmental review, analyze the results, prepare an appropriate environmental document, and circulate as necessary under CEQA. What that environmental document will be and what conclusions it will reach·have not yet been determined."

B. *Necessity of a Writ of Mandate*

Appellants contend the trial court erred in implementing its remedies for the CEQA violations because it failed to issue the peremptory writ required by its own judgment and CEQA. Respondents argue that the judgment effectively operates as a writ of mandate and the mere fact it was not denominated as such is not prejudicial error.

Subdivision (a) of Public Resources Code section 21168.9 addresses what a court should include in its order when it finds that a public agency has not complied with CEQA. Subdivision (b) of Public Resources Code section 21168.9 provides in part: "Any order pursuant to subdivision (a) shall include only those mandates which are necessary to achieve compliance with this division and only those specific project activities in noncompliance with this

division. *The order shall be made by the issuance of a peremptory writ of mandate specifying what action by the public agency is necessary to comply with this division . . . .* The trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division." (Italics added.)

█ This provision is clear in its use of mandatory language with respect to the issuance of a peremptory writ of mandate and the use of a return.

In this case the trial court did not comply with the mandatory language requiring the issuance of a peremptory writ of mandate. On remand, we will direct the trial court to comply with subdivision (b) of Public Resources Code section 21168.9 and actually issue a peremptory writ of mandate.

The disputes regarding what should be set forth in the writ of mandate are addressed in the unpublished portion of this opinion.

### C. Severance and Overturning the Entire Project Approval

Appellants contend that the trial court erred by severing the identified CEQA defects and instead should have overturned the entire project approval. Respondents contend that it would violate Public Resources Code section 21168.9, subdivision (b) for this court to void the entire Campus Pointe project even though the trial court found only three limited defects requiring additional environmental analysis.

The trial court did not here sever a "portion or specific project activity or activities" from the remainder of the project. (Pub. Resources Code, § 21168.9, subd. (b).) It did not, for example, allow the development of one parcel to proceed and stop the development of another parcel. (See *Anderson First Coalition v. City of Anderson* (2005) 130 Cal.App.4th 1173, 1181 [30 Cal.Rptr.3d 738] [trial court properly severed gas station from the rest of the Wal-Mart Supercenter].) For that reason, appellants' assertion that the trial court erred in its application of the concept of severance set forth in Public Resources Code section 21168.9, subdivision (b) must be rejected.

█ Appellants' misunderstanding of severance, however, does not necessarily undermine the merit of their related assertion that the entire project approval should have been overturned. The following treatise describes the application of the provisions of Public Resources Code section 21168.9, subdivision (b) when the project has not been severed. "In contrast to a case where severance is proper, a situation may arise where an EIR is inadequate in some respects, but not others. This requires the local agency to set aside all

project approvals and the certification of the EIR but the writ of mandate need only require the preparation, circulation and consideration under CEQA of a legally adequate EIR on limited issues." (Robie et al., Cal. Civil Practice: Environmental Litigation (2010) § 8:33, p. 61.)

■ The treatise's statement about the requirement "to set aside all project approvals and the certification of the EIR" supports appellants' contention that the trial court "should have overturned the entire project approval." (Boldface & some capitalization omitted.) The treatise's statement of the requirement also is compatible with the wording of the regulation and statutes that address certification of the final EIR. "Prior to approving a project the lead agency shall certify that: [¶] (1) The final EIR has been completed in compliance with CEQA . . . ." (CEQA Guidelines,[10] § 15090, subd. (a); see Pub. Resources Code, §§ 21100, subd. (a), 21151, subd. (a) [lead or local agencies shall certify completion of EIR on any project they propose to approve].) The wording of the guideline and statutes indicates that a final EIR should not be certified if it is not complete or in compliance with CEQA.

In many cases, the Courts of Appeal have set aside the certification of a final EIR because of an inadequacy in part of the document. For example, where the only deficiency in the EIR was the failure to explain why reduced water flow in local creeks would not be environmentally significant, the appellate court remanded for issuance of a writ directing the agency "to set aside its certification of the final EIR and to take the action necessary to bring the water resources section of the EIR into compliance with CEQA." (*Protect the Historic Amador Waterways v. Amador Water Agency* (2004) 116 Cal.App.4th 1099, 1112 [11 Cal.Rptr.3d 104]; see *Save Our Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99, 143 [104 Cal.Rptr.2d 326] [certification of EIR vacated based on inadequate discussion of water issues; traffic analysis in EIR upheld].)

■ Respondents argue that setting aside the entire certification is excessive because CEQA states that the trial court's order "shall include only those mandates which are necessary to achieve compliance with [CEQA]" (Pub. Resources Code, § 21168.9, subd. (b)), and setting aside the entire certification is not "necessary" because CEQA authorizes agency decisions (such as certification) to be voided "in part" (Pub. Resources Code, § 21168.9, subd. (a)(1)). We disagree with respondents' statutory construction and reject the idea of partial certification. ■ The statutes and CEQA Guidelines provide for the certification of an EIR when it is complete, and the concept of completeness is not compatible with partial certification. In short, an EIR is either complete or it is not.

---

[10] "CEQA Guidelines" refers to the regulations that implement CEQA and are codified in California Code of Regulations, title 14, section 15000 et seq.

■ Next, we consider whether the approval of the project should be set aside. Our discussion of this question is short; this court has answered it in published decisions. In *Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184 [22 Cal.Rptr.3d 203], we concluded that a lead agency must certify a legally adequate EIR prior to deciding whether to approve a contested project. Based on this conclusion and a determination that certification of the EIR in that case was an abuse of discretion, we stated that "the project approvals and associated land use entitlements also must be voided. [Citations.]" (*Id.* at p. 1221.) We followed this approach in *San Joaquin Raptor Rescue Center v. County of Merced* (2007) 149 Cal.App.4th 645, 672 [57 Cal.Rptr.3d 663] and shall follow it here because respondents have not acknowledged this precedent, much less set forth a compelling argument for overturning it.

Based on the foregoing, the trial court's determination that the final EIR was inadequate in certain respects requires an order directing the board of trustees to set aside its certification of the final EIR as well as its approval of the project. We will instruct the trial court to modify its judgment and to issue a writ of mandate that includes these directions.

D.–F.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment filed on July 1, 2009, is affirmed in part and reversed in part. Paragraph 3 of the judgment is affirmed. Paragraph 2 of the judgment is reversed, except for the part regarding traffic and parking analysis. The superior court is directed to modify paragraph 2 to direct respondents to (1) set aside the certification of the final EIR, (2) set aside the approval of the project, (3) set aside its adoption of findings of fact and statement of overriding considerations to permit the revisions of findings as they relate to the additional review that will be conducted pursuant to the judgment and writ of mandate, (4) take the action necessary to bring the water supply assessment in the EIR into compliance with CEQA, and (5) take the action necessary to bring the air quality section in the EIR into compliance with CEQA, which action shall include a discussion of the applicability of the San Joaquin Valley Air Pollution Control District indirect source rule (rule 9510).

The superior court may, in an exercise of its discretion, (1) reference the May 2007 resolution of the board of trustees in the modified judgment and

---

*See footnote, *ante*, page 675.

writ of mandate, provided that such references are in accordance with this opinion and (2) may alter the time for filing a return to the writ.

The superior court is directed to issue a peremptory writ of mandate as soon as practicable after it has filed the modified judgment.

The parties shall bear their own costs on appeal.

Cornell, Acting P. J., and Gomes, J., concurred.