Filed 12/4/17

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY et al., | B280815 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BS131347) |
| v. | |
| CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE, | |
| Defendant and Respondent; | |
| THE NEWHALL LAND AND FARMING COMPANY, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John A. Torribio, Judge. Affirmed.

---

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III(A).

John Buse, Kevin Bundy and Aruna Prabhala; Chatten-Brown and Carstens, Jan Chatten-Brown and Doug Carstens; Frank G. Wells Environmental Law Clinic and Sean B. Hecht; Wishtoyo Foundation/Ventura Coastkeeper and Jason A. Weiner; Adam Keats, for Plaintiffs and Appellants Center for Biological Diversity, Friends of the Santa Clara River, Santa Clarita Organization for Planning and the Environment, California Native Plant Society, Wishtoyo Foundation/Ventura Coastkeeper.

Office of the General Counsel, Wendy L. Bogdan and John H. Mattox, Senior Staff Counsel; Thomas Law Group, Tina A. Thomas, Amy R. Higuera and Meghan M. Dunnagan, for Defendant and Respondent California Department of Fish and Wildlife.

Gatzke Dillon & Ballance, Mark J. Dillon and David P. Hubbard; Nielsen Merksamer Parinello Gross & Leoni and Arthur G. Scotland; Morrison & Foerster and Miriam A. Vogel, for Real Party in Interest and Respondent The Newhall Land and Farming Company.

## I.  INTRODUCTION

This is the second appeal in this case, in which plaintiffs brought a mandate petition challenging under the California Environmental Quality Act (CEQA; Pub. Resources Code § 21000 et seq.) the environmental impact report (EIR) and related project approvals for two natural resource plans for the proposed Newhall Ranch development in northwest Los Angeles County.[1]

---

[1]     After oral argument, Center for Biological Diversity, California Native Plant Society and Wishtoyo Foundation/Ventura Coastkeeper moved to dismiss their appeal

Our review is shaped by the first appeal, which resulted in an opinion from our Supreme Court and our subsequent opinion on remand.

In this appeal from the post-remand judgment, plaintiffs argue that the judgment and accompanying writ were erroneous under CEQA for two purely legal reasons: they claim that Public Resources Code section 21168.9[2] prohibits partial decertification of an EIR, and that the same section prohibits leaving project approvals in place while decertifying an EIR. We hold that both actions are legally permissible under CEQA. We thus affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The first appeal was taken from a 2012 trial court judgment, and a corresponding writ of mandate, that set aside the Newhall Ranch project approvals, ordered defendant California Department of Fish and Wildlife (the department) to set aside its certification of the final EIR, and enjoined the department and the developer from proceeding with any project

---

after they settled with respondents. We dismissed them from the appeal on October 20, 2017. Thus, the only plaintiffs in this appeal are Friends of the Santa Clara River and Santa Clarita Organization for Planning and the Environment.

[2] Further statutory references are to the Public Resources Code unless otherwise specified.

activity.[3]  In our first opinion in the matter, we reversed the judgment in full.  (*Center for Biological Diversity v. Department of Fish and Wildlife* (Mar. 20, 2014, B245131) [nonpub. opn.], review granted July 9, 2014, No. S217763 (*Center for Biological Diversity I*).)

On review, our Supreme Court, reversing our ruling, held that the Newhall Ranch's EIR was deficient in two ways:  its finding that the project's greenhouse gas emissions were insignificant was "not supported by a reasoned explanation based on substantial evidence"; and its measure of protecting a fish species, the unarmored threespine stickleback, by capturing and relocating it, was itself a prohibited taking of the protected species under the Fish and Game Code.  (*Center for Biological Diversity v. Department of Fish and Wildlife* (2015) 62 Cal.4th 204, 213, 231-232, 237.)  Additionally, the Supreme Court directed us to reexamine on the merits two claims of report deficiencies that we had held were forfeited—the project's impact on Native American cultural resources, and the effect of the project's dissolved copper discharge on steelhead smolt.  (*Id.* at p. 240.)

Following remand from the Supreme Court, on July 11, 2016, we issued a decision affirming in part and reversing in part the original judgment on the mandate petition, with directions to the trial court on remand.  (*Center for Biological Diversity v. Department of Fish and Wildlife* (2016) 1 Cal.App.5th 452, 469 (*Center for Biological Diversity II*).)  As to greenhouse gas emission impact, applying the Supreme Court's opinion, we

---

[3]	The developer is The Newhall Land and Farming Company, which is the real party in interest and project applicant.

4

directed the trial court "to enter a finding that there is no substantial evidence the project's greenhouse gas emissions will not result in a cumulatively significant environmental impact." (*Ibid.*) As to the stickleback, also following the Supreme Court's directions, we affirmed the trial court's finding that the mitigation measures to protect that fish violated Fish and Game Code section 5515. (*Ibid.*) Finally, where the trial court had found deficiencies concerning Native American resources and the steelhead smolt, we reversed after considerable analysis. (*Ibid.*) The remainder of the EIR survived the appellate process.

In sum, we held that on remand the trial court was to address only the greenhouse gas emission and stickleback issues, which "will entail at the minimum setting aside those two portions of the [EIR]. But beyond that, we leave further matters in the trial court's good hands. Whether to maintain the injunction against *any* development in effect or partially certify the environmental impact report depends on competing factual issues including section 21168.9, subdivision (b) severance issues. [Citations]." (*Center for Biological Diversity II, supra,* 1 Cal.App.5th at p. 469.)

After a hearing following the remand, the trial court entered judgment on December 16, 2016 and issued a corresponding peremptory writ of mandate on December 19, 2016. Following the terms of the remand, judgment was rendered in favor of plaintiffs as to the greenhouse gas emission and stickleback findings in the EIR. Judgment was rendered in favor of the department and the developer as to all other issues.

The judgment further ordered that a peremptory writ of mandate be issued directing the department to decertify the portions of the EIR that address the significance of the project's

greenhouse gas emissions, and the validity of the stickleback mitigation measures. The judgment stated: "Consistent with the Supreme Court's opinion, all remaining portions of the EIR comply with CEQA." Accordingly, the writ directed the department to void certification of portions of the EIR that address the department's determination regarding the significance of the project's greenhouse gas emissions and the stickleback mitigation measures.

The judgment and writ also enjoined all project activity including construction until the EIR was compliant with law. Further, the department also was ordered to "suspend" two project approvals that related directly to the EIR's determinations regarding the significance of the project's greenhouse gas emissions and stickleback mitigation measures, but four other approvals were left in place because no action was needed as to them "unless compliance with the Writ changes or affects" them.

Plaintiffs appeal from the December 16, 2016 judgment.[4]

## III.  DISCUSSION

[Part III(A) is deleted from publication.  See *post* at page 9 where publication is to resume.]

A.  *An Appeal from the Writ Was Not Required*

We first address the respondents' contention that we lack jurisdiction to consider the writ because the appeal is only from

---

[4]     On March 23, 2017, the department and developer filed motions to dismiss the appeal as frivolous. We deny the motions to dismiss.

6

the judgment, not from the writ.  They assert this is so because the writ is a separate appealable postjudgment order under Code of Civil Procedure section 904.1, subdivisions (a)(1) and (a)(2). The developer also argues the writ is a separate appealable order because it is injunctive.  We disagree that an appeal from the writ was necessary here.

We reject respondents' contention that the writ is a separate appealable postjudgment order.  Code of Civil Procedure section 904.1, subdivision (a)(2) provides for an appeal from an order made after a judgment.  Although the language of Code of Civil Procedure section 904.1, subdivision (a)(2) is broad, "not every postjudgment order that follows a final appealable judgment is appealable." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 (*Lakin*); *Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042, 1047.)  "The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment." (*Lakin, supra*, 6 Cal.4th at p. 651.)  "The second requirement . . . is that 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.' [Citation.]" (*Id.* at pp. 651-652.)  The first requirement is not met here because the writ does not raise issues different from those arising from an appeal of the judgment.

Here, although the writ was issued after the judgment, the judgment was in substance one granting a writ that simply carried out the judgment in a manner that did not exceed its terms. (*Endangered Habitats League, Inc. v. State Water Resources Control Bd.* (1997) 63 Cal.App.4th 227, 244 [CEQA case where writ was ministerial order issued by clerk following judgment].)  The judgment and writ here arose from a hearing in

7

which the parties argued both of them, and the trial court simultaneously ordered both issued. The writ appears to have been issued on a later date only because the trial court ordered a party to make an edit to a proposed version of it. The terms of the judgment incorporated the writ, ordering that "[a] peremptory writ of mandate be issued" and directing its particular content. Should we reverse the judgment, the writ issued pursuant to it would be vacated and without effect.

An appeal from the judgment granting a writ necessarily challenges the writ issued pursuant to that judgment. "When the trial court issues its judgment granting a peremptory writ, the respondent has two choices: to appeal that judgment or to comply with it. If the respondent elects to comply with the writ, it waives its right to appeal from the judgment granting the writ petition." (*Los Angeles Internat. Charter High School v. Los Angeles Unified School Dist.* (2013) 209 Cal.App.4th 1348, 1354; accord, *City of Carmel-by-the-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 970.) No separate appeal of the writ is required because the writ is the remedy provided by the judgment granting the writ.

The developer further argues the writ is injunctive in nature and thus it is an injunctive order appealable under Code of Civil Procedure section 904.1, subdivision (a)(6). But the judgment itself orders the injunction, stating that "[n]o Project activity (including construction) shall commence" until corrective action is taken. None of the cases relied upon by the developer involve a writ directed by a judgment granting the writ. Because this court has jurisdiction to consider plaintiffs' challenge to the judgment, that jurisdiction includes the ability to consider the writ issued pursuant to that judgment's terms.

8

[The balance of the opinion is to be published.]

B. *A Trial Court Has Authority to Partially Decertify an EIR*

We turn to plaintiffs' first legal challenge. The judgment directs the department to decertify only the portions of the EIR that address greenhouse gas emissions and stickleback mitigation measures, rather than the entire EIR, and the writ implements that partial decertification order. Plaintiffs argue that "CEQA permits no such middle ground" between full decertification and no decertification. Plaintiffs claim: "Nothing in CEQA supports the concept of a partially adequate EIR. An EIR can either be certified as 'complete' under CEQA or not."

Plaintiffs are correct that an agency *initially* must certify an entire EIR before approving a project. (Cal. Code Regs., tit. 14, § 15004, subd. (a) (Guidelines) ["Before granting any approval of a project subject to CEQA, every lead agency . . . shall consider a final EIR . . . ."]; *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 394 (*Laurel Heights*).) However, a court has additional options once it has found an agency's EIR certification noncompliant. Section 21168.9 governs the writ of mandate that a court issues after "trial, hearing, or remand from an appellate court" to remedy a CEQA violation. (*Save Our Schools v. Barstow Unified School Dist. Bd. of Education* (2015) 240 Cal.App.4th 128, 144; *Preserve Wild Santee v. City of Santee* (2012) 210 Cal.App.4th 260, 286 *(Preserve Wild Santee)*.) We review a trial court's interpretation of section 21168.9 de novo. (*Golden Gate Land Holdings LLC v. East Bay Regional Park Dist.* (2013) 215 Cal.App.4th 353, 368

9

(*Golden Gate*); *Preserve Wild Santee, supra*, 210 Cal.App.4th at p. 287.)

Section 21168.9, subdivision (a) clearly allows a court to order partial decertification of an EIR following a trial, hearing, or remand.[5]  The section applies when a court finds that "*any determination, finding, or decision of a public agency*" is non-compliant.  (§ 21168.9, subd. (a) [emphasis added]).  After making such a finding, "the court must enter an order, in the form of a peremptory writ of mandate, containing one or more of three specified mandates.  (§ 21168.9, subds. (a) & (b).)" (*Preserve Wild Santee, supra*, 210 Cal.App.4th at p. 286.)  One of those three mandates is voiding the agency determination "in whole or in part."  (§ 21168.9, subd. (a)(1).)  When a court voids an agency

---

[5]  Section 21168.9, subdivision (a) provides:  "(a) If a court finds, as a result of a trial, hearing, or remand from an appellate court, that any determination, finding, or decision of a public agency has been made without compliance with this division, the court shall enter an order that includes one or more of the following:  [¶]  (1) A mandate that the determination, finding, or decision be voided by the public agency, in whole or in part.  [¶] (2) If the court finds that a specific project activity or activities will prejudice the consideration or implementation of particular mitigation measures or alternatives to the project, a mandate that the public agency and any real parties in interest suspend any or all specific project activity or activities, pursuant to the determination, finding, or decision, that could result in an adverse change or alteration to the physical environment, until the public agency has taken any actions that may be necessary to bring the determination, finding, or decision into compliance with this division.  [¶]  (3) A mandate that the public agency take specific action as may be necessary to bring the determination, finding, or decision into compliance with this division."

determination "in part," it must make severance findings pursuant to section 21168.9, subdivision (b), to determine whether the voided portions are severable, and whether the remainder will be in full compliance with CEQA.[6] As an EIR certification is an agency determination, it may be voided in part by a trial court following such findings.

Our view is in accord with *Preserve Wild Santee, supra*, 210 Cal.App.4th at page 288: "[A] reasonable, commonsense reading of section 21168.9 plainly forecloses plaintiffs' assertion that a trial court must mandate a public agency decertify the EIR and void all related project approvals in every instance where the court finds an EIR violates CEQA. Such a rigid requirement directly conflicts with the 'in part' language in section 21168.9, subdivision (a)(1), which specifically allows a court to direct its mandates to parts of determinations, parts of findings, or parts of

_____

[6] Section 21168.9, subdivision (b) provides: "Any order pursuant to subdivision (a) shall include only those mandates which are necessary to achieve compliance with this division and only those specific project activities in noncompliance with this division. The order shall be made by the issuance of a peremptory writ of mandate specifying what action by the public agency is necessary to comply with this division. However, the order shall be limited to that portion of a determination, finding, or decision or the specific project activity or activities found to be in noncompliance only if a court finds that (1) the portion or specific project activity or activities are severable, (2) severance will not prejudice complete and full compliance with this division, and (3) the court has not found the remainder of the project to be in noncompliance with this division. The trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division."

11

decisions. Such a rigid requirement also conflicts with the language in section 21168.9, subdivision (b), limiting the court's mandates to only those necessary to achieve CEQA compliance and, if the court makes specified findings, to only 'that *portion* of a determination, finding, or decision' violating CEQA." (Accord, *Golden Gate, supra*, 215 Cal.App.4th at p. 376.)

Allowing for the partial decertification of an EIR effectuates the statute's purpose. "Section 21168.9 was enacted in 1984 to give the trial courts some flexibility in tailoring a remedy to fit a specific CEQA violation." (*San Bernardino Valley Audubon Society v. Metropolitan Water Dist.* (2001) 89 Cal.App.4th 1097, 1103 (*San Bernardino Valley Audubon Society*).)

Plaintiffs' restrictive view of section 21168.9 derives from *LandValue 77, LCC v. Board of Trustees of California State University* (2011) 193 Cal.App.4th 675, 681-682 (*LandValue*). Plaintiffs argue that case "ruled conclusively that partial decertification is not consistent with the role of the EIR in the CEQA process." *LandValue*, however, expressly addressed a situation where the trial court did not properly make severance findings under section 21168.9, subdivision (b). (*Id.* at p. 681.) It relied on a section of a treatise addressing section 21168.9 "when the project has not been severed" and that stated a rule that was "'[i]n contrast to a case where severance is proper. . . .'" (*Ibid.*) Thus, *LandValue* does not prohibit partially setting aside an EIR, so long as a court makes severance findings under section 21168.9, subdivision (b). In their reply brief, plaintiffs also rely on *Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1221 (*Bakersfield Citizens*). Without discussion of section 21168.9, that case required an

12

agency to decertify an entire EIR, but, as in *LandValue*, there were no "severable aspects of the projects." (*Bakersfield Citizens, supra*, 124 Cal.App.4th at p. 1221.)

We note that, in our July 11, 2016 opinion, we effectively ruled that, with proper findings, it would be permissible to partially decertify the EIR. After stating that on remand the trial court was to address only the greenhouse gas emission and stickleback mitigation issues, we noted that "[t]his will entail at a minimum setting aside those portions of the [EIR]. But beyond that, we leave further matters in the trial court's good hands. Whether to maintain the injunction against *any* development in effect or partially certify the [EIR] depends on competing factual issues including section 21168.9, subdivision (b) severance issues. [Citations]." (*Center for Biological Diversity II, supra*, 1 Cal.App.5th at pp. 455, 469.) The Supreme Court, likewise, did not order the EIR decertified in its entirety even though it found portions of it noncompliant; instead, it ordered: "The Court of Appeal shall further decide, or remand for the superior court to decide, the parameters of the writ of mandate to be issued. (See § 21168.9.)" (*Center for Biological Diversity, supra*, 62 Cal.4th at p. 240.)

Under section 21168.9, subdivision (a)(1), a court has authority to order partial decertification of an EIR so long as the severability criteria pursuant to subdivision (b) of that section are satisfied. The trial court exercised that authority here.

13

C. *A Trial Court Has the Power to Leave Some Project Approvals in Place After Partial Decertification of an EIR*

Plaintiffs' second legal challenge is to the trial court's authority to leave some project approvals in place even though the EIR was partially decertified. The trial court's writ stated that portions of only two of the department's project approvals "directly relate" to the EIR's greenhouse gas emissions analysis and the stickleback mitigation measures; "accordingly, only these two approvals need to be corrected. All other Project approvals were based on [unaffected] portions of the EIR . . . and no remedial action is required unless compliance with the Writ changes or affects previous Project approvals."

Plaintiffs argue that leaving an agency's project approvals in place after decertifying an EIR makes the environmental analysis "nothing more than a post hoc rationalization of its existing approvals," an approach proscribed by CEQA. We agree an agency initially must certify an EIR prior to approval of a project. (Guidelines, § 15004, subd. (a); *Laurel Heights, supra*, 47 Cal.3d at p. 394.) However, as we discussed earlier in holding that a court has power to partially void an EIR, a trial court has authority under section 21168.9 to order an agency's determination be voided "in whole or in part." In our view, this language allows for the possibility of leaving some project approvals in place when an EIR is partially decertified. Under section 21168.9, subdivision (b), the court is required to order "only those mandates which are necessary to achieve compliance with this division and only those specific project activities in noncompliance with this division." Thus, if the court finds that it

14

will not prejudice full compliance with CEQA to leave some project approvals in place, it must leave them unaffected.

The requirement of severability findings serves to ensure that the approvals that remain in place will not obstruct CEQA compliance. (*Preserve Wild Santee, supra*, 210 Cal.App.4th at p. 288 [section 21168.9, subdivision (b) "forecloses plaintiffs' assertion that a trial court must mandate a public agency decertify the EIR and void all related project approvals in every instance where the court finds an EIR violates CEQA"]; *San Bernardino Valley Audubon Society, supra*, 89 Cal.App.4th at pp. 1104-1105 ["[S]ection 21168.9 . . . 'expressly authorizes the court to fashion a remedy that permits some part of the project to go forward while an agency seeks to remedy its CEQA violations.'"]; see also *Laurel Heights, supra*, 47 Cal.3d at p. 424 [university may continue operations already begun but may not expand existing operations until a new EIR is certified].)

Indeed, while the Legislature enacted section 21168.9 in 1984 to give the trial courts flexibility in tailoring CEQA remedies, it amended the statute in 1993 to expand "the trial court's authority and 'expressly authorized the court to fashion a remedy that permits some part of the project to go forward while an agency seeks to remedy its CEQA violations. In other words, the issuance of a writ need not always halt all work on a project.'" (*San Bernardino Valley Audubon Society, supra*, 89 Cal.App.4th at pp. 1104-1105.)

Neither the Supreme Court opinion nor our July 11, 2016, opinion ordered the trial court to set aside all project approvals. Instead, it was left to the trial court to decide "the parameters of the writ of mandate to be issued." (*Center for Biological Diversity, supra*, 62 Cal.4th at p. 240; accord *Center for Biological*

15

*Diversity II, supra*, 1 Cal.App.5th at p. 469 ["we leave further matters in the trial court's good hands"].)  Under section 21168.9, the trial court has the authority to leave some project approvals in place when decertifying portions of an EIR, so long as it appropriately finds the portions severable under section 21168.9, subdivision (b).  This is the authority that the trial court exercised here.

D.  *The Trial Court Did Not Abuse Its Discretion in Issuing the Limited Writ*

Our analysis in the two preceding sections concerns the trial court's authority to make severability findings and thus set aside only part of an EIR and leave in place some project approvals.  Plaintiffs, however, also challenge the trial court's exercise of its authority here.  We review for abuse of discretion. (*Golden Gate, supra*, 215 Cal.App.4th at p. 368; *Preserve Wild Santee, supra*, 210 Cal.App.4th at p. 287.)

Under the terms of section 21168.9, subdivision (b), the trial court must "include only those mandates which are necessary to achieve compliance" with CEQA.  It is to exclude a portion of an EIR or an approval only if it "finds that (1) the portion or specific project activity or activities are severable, (2) severance will not prejudice complete and full compliance with this division, and (3) the court has not found the remainder of the project to be in noncompliance with this division."

At the outset of the December 16, 2016, hearing on remand, the trial court laid out these severability factors and determined that the third factor was satisfied because the project, other than greenhouse gas analysis and stickleback mitigation measures,

16

was found to be in compliance. After argument, the court indicated that the other two factors were covered by the respondents' proposal "to suspend any project activity, including construction." The court stated: "when I approve a writ that says, basically, suspend any project activity that could result in adverse change or alteration unless and until the Department takes corrective action to address the two EIR deficiencies . . . . That's pretty specific. There's no way for them to cheat." The court edited the proposed writ to include language intended to ensure that the court could review the approvals again if "compliance with this writ changes or affects the previous approvals."

Accordingly, in the judgment, the court ordered all work on the project suspended until the EIR was compliant: "No Project activity (including construction) shall commence unless and until Respondent completes corrective action to address the[] two deficiencies in Respondent's EIR and Respondent has complied with CEQA, Fish and Game Code section 5515, and this Court's Writ." Likewise, consistent with the mandate available through section 21168.9, subdivision (a)(2), the writ ordered the department "[t]o suspend any Project activity (including construction) that could result in an adverse change or alteration to the physical environment unless and until the Department takes corrective action to address the two EIR deficiencies identified above and complies with CEQA, Fish and Game Code section 5515, and this Writ (§ 21168.9, subd. (a)(2))."

In support of its action, the trial court made the following severability findings in the writ: "Only portions of the first two of the Project approvals—the CEQA Findings of Fact and Statement of Overriding Considerations and Mitigation

17

Monitoring and Reporting Plan[7]—directly relate to the EIR's greenhouse gas emissions analysis and [stickleback] mitigation measures []; accordingly, only these two approvals need to be corrected.  All other Project approvals were based on portions of the EIR that were not affected by the Supreme Court decision and no remedial action is required unless compliance with this Writ changes or affects previous Project approvals.  [¶] Severance of the non[]complaint Project approvals from the other Project approvals will not prejudice complete and full compliance with CEQA or Fish and Game Code section 5515 because, as required above, no Project activity (including construction) that could result in an adverse change or alteration to the physical environment is allowed under this Writ unless and until the Department takes corrective action to address the two EIR deficiencies identified above and the Department has complied with CEQA, Fish and Game Code section 5515, and this Writ. The remainder of the Project, the Project approvals, and the

_____

[7] We need not resolve plaintiffs' argument that the CEQA Findings of Fact and Statement of Overriding Considerations and the Mitigation Monitoring and Reporting Plan are not "project approvals," as plaintiffs' overall argument is that the trial court should have voided the approvals left in place, not that the trial court erred in suspending the two purported approvals that it did.  By directing the department to correct these purported approvals, the trial court suspended the CEQA process, and thus the project, until the department made these corrections. (§ 21081 & Guidelines, § 15091, subd. (a) [CEQA findings]; § 21081.6, subd. (a)(1) & Guidelines, § 15097 [mitigation monitoring or reporting program]; & Guidelines, § 15093 [statement of overriding considerations].)

subject EIR were not found to violate CEQA or the Fish and Game Code (§ 21168.9, subd. (b)).”

We agree that these severability findings satisfied section 21168.9, subdivision (b). The result of the first appeal was that the EIR was compliant except for its portions concerning greenhouse gas analysis and stickleback mitigation. By suspending all project activity that “could result in an adverse change or alteration to the physical environment,” the entire project was effectively put on hold. The trial court thus ensured that the status quo would be preserved for the department to reanalyze the parts of the EIR found inadequate. For example, if the greenhouse gas emission impact is significant, the department can require feasible mitigation measures and enforce them through permit conditions and agreements, or incorporate them into a plan or project design. (§ 21081.6, subd. (b); Guidelines, §§ 15040, subd. (c), 15041, subd. (a).)[8] The status quo

_____

[8] The department requests judicial notice of the “Final Actions and Supplemental Findings of the California Department of Fish and Wildlife for the Newhall Ranch Resource Management and Development Plan and Spineflower Conservation Plan,” approved on June 14, 2017. The department argues this document is relevant to show it conducted additional environmental review in response to the writ and reapproved the project. We deny the department's request for judicial notice because the document was not before the trial court. (*Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 234 Cal.App.4th 214, 227, fn. 4.) Furthermore, the document is not relevant to the disposition of this appeal as we need not reach post-writ matters. (*Defend Our Waterfront v. State Lands Com.* (2015) 240 Cal.App.4th 570, 591; *Golden Gate, supra*, 215 Cal.App.4th at p. 366 [“Only relevant evidence is admissible by judicial notice.”].)

19

also would be preserved for the trial court to make any orders necessary for complete enforcement of the writ, which could include orders to revisit other portions of the EIR or project approvals in the event changes (such as mitigation measures) to address greenhouse gases and the stickleback had unanticipated adverse effects on other portions of the project.

Plaintiffs cite *Olive Proration Etc. Com. v. Agri. Etc. Com.* (1941) 17 Cal.2d 204, 209 and argue that with the approvals left in place, principles of res judicata leave the department with no discretion to revisit its prior approvals. But for an agency action on an EIR *after* it has been partially decertified and then revised, we think it clear that "the legislature intended that the agency should exercise a continuing jurisdiction with power to modify or alter its orders to conform to changing conditions, [so] the doctrine of *res judicata* is not applicable." (*Ibid.*; *George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1290-1291 [administrative proceeding may be reopened to allow litigation of intervening change of law]; *Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 732 ["'much administrative action should be subject to a qualified or relaxed set of rules concerning res judicata'"].)

Indeed, the writ itself permits the department to reconsider prior project approvals: "All other Project approvals were based on [unaffected] portions of the EIR . . . and no remedial action is required unless compliance with this Writ changes or affects previous Project approvals." At the hearing on remand, the trial court stated that both it and the department could revisit prior project approvals if necessary: "[A]nything that goes on with the [stickleback and greenhouse gas issues] spills over into these

20

other approvals, then I would have to look at them again.  That [i.e., the language in the writ] gives them discretion to do so."  Just as the department can review prior project approvals, section 21168.9, subdivision (b) empowers the trial court to "retain jurisdiction over the public agency's proceeding by way of a return to the peremptory writ" until the court has determined the agency has complied with CEQA.

Consequently, plaintiffs have provided us no convincing reason to conclude that the trial court abused its discretion by not setting aside all project approvals where it suspended all project activity pending correction of the EIR.

E.  *The Writ Provides an Adequate Remedy for the Fish and Game Code Section 5515 Violation*

Plaintiffs contend section 21168.9 does not govern the remedy for the department's violation of Fish and Game Code section 5515 in erroneously approving the stickleback mitigation measures.  We agree section 21168.9 applies to CEQA violations, not violations under the Fish and Game Code.  But there is no reason to conclude that the judgment and writ must suspend every project approval in order to ensure compliance with the Fish and Game Code.  The department's obligation to avoid the taking of stickleback does not affect the entire project, and in particular does not implicate the most relevant project approval, the streambed alteration agreement.  The streambed alteration agreement prohibits the taking of stickleback:  "This Agreement . . . does not authorize the take of any species protected under the state or federal Endangered Species Act, or other state or federal laws."

21

Furthermore, for the same reasons that the writ is appropriate to remedy the CEQA violation, the writ provides a suitable remedy for the Fish and Game Code section 5515 violation and follows the Supreme Court's ruling and our remand instruction. The writ suspends portions of the CEQA Findings of Fact and Statement of Overriding Considerations and the Mitigation Monitoring and Reporting Plan relating to the stickleback mitigation measures, and suspends all project activity until the department develops alternatives to these mitigation measures. These writ remedies ensure compliance with Fish and Game Code section 5515 by prohibiting the taking of stickleback.

## IV. DISPOSITION

We affirm the December 16, 2016 judgment. Defendant and real party in interest shall recover their costs on appeal from plaintiffs.

CERTIFIED FOR PARTIAL PUBLICATION


RAPHAEL, J.*

We concur:


KRIEGLER, Acting P.J.          BAKER, J.

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.