Filed 12/22/20 (unmodified opinion attached)

**<u>CERTIFIED FOR PARTIAL PUBLICATION</u>**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SIERRA CLUB et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>COUNTY OF FRESNO et al.,<br><br>    Defendants;<br><br>FRIANT RANCH, L.P.,<br><br>    Real Party in Interest and Appellant. | F079904<br><br>(Super. Ct. No. 11CECG00706)<br><br><br>**ORDER MODIFYING OPINION AND DENYING PUBLICATION REQUESTS [NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on November 24, 2020, be modified as follows:

On page 33, insert the following paragraph to the end of part II.B.5. immediately before the Disposition heading:

Finally, issues involving the application of section 21166 (supplemental and subsequent EIR's) or Guidelines section 15162 (subsequent EIR's) were not represented in this appeal. Therefore, this opinion expresses no views on how those provisions should be applied in the further proceedings after remand.

There is no change in the judgment.

The requests for publication of parts I. and II.A. of the Discussion and depublication of part II.B.5. of the Discussion filed on December 11, 2020 and December 14, 2020, are hereby denied.  Part II.B.5. is modified as stated above.

In compliance with California Rules of Court, rule 8.1120(b), the Clerk/Executive Officer of this court shall transmit copies of the request for publication, the opinion, and this order to the Supreme Court.

FRANSON, J.

I CONCUR:

HILL, P.J.

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SIERRA CLUB et al., <br><br>    Plaintiffs and Respondents, <br><br>    v. <br><br> COUNTY OF FRESNO et al., <br><br>    Defendants; <br><br> FRIANT RANCH, L.P., <br><br>    Real Party in Interest and Appellant. | F079904 <br><br> (Super. Ct. No. 11CECG00706) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Kristi Culver Kapetan, Judge.

Remy Moose Manley, James G. Moose, Tiffany K. Wright and Laura M. Harris for Real Party in Interest and Appellant.

Chatten-Brown Carstens & Minteer, Douglas P. Carstens and Michele Black Plaintiffs and Respondents.

-ooOoo-

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I. and II.A. of the Discussion.

This appeal involves the application of the California Environmental Quality Act (CEQA)[1] to a proposed master-planned community located in Fresno County below Friant Dam and Millerton Lake. The project's developer, real party in interest Friant Ranch, L.P. (Developer), contends the trial court erred in drafting the writ of mandate issued after this court's opinion in *Sierra Club v. County of Fresno* (2014) 226 Cal.App.4th 704 was affirmed in part and reversed in part by the California Supreme Court in *Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502 (*Sierra Club*). The Supreme Court "remand[ed] the matter for additional proceedings consistent with this opinion." (*Id*. at p. 527.) Developer contends the trial court misinterpreted the combined opinions and abused its discretion by adopting an overly broad remedy that did not comply with section 21168.9. In Developer's view, the court should have issued a narrow writ, partially decertifying the environmental impact report (EIR) and leaving most of the project's approvals in place. We disagree.

In the unpublished parts of this opinion, we conclude (1) the trial court correctly interpreted the opinions of the Supreme Court and this court when it drafted the writ of mandate and (2) the writ properly directed the lead agency to vacate its approvals of the project because, for purposes of section 21168.9, those approvals are not severable—that is, are not unaffected by the CEQA violations.

In the published part of this opinion, we provide two alternate grounds for rejecting Developer's contention that the writ should have directed a partial decertification of the EIR. First, the statutes require the public agency to certify "the completion of" the EIR. (§§ 21100, subd. (a), 21151, subd. (a).) We again reject the statutory interpretation that allows for partial certification because an EIR is either completed in compliance with CEQA or it is not so completed. (*LandValue 77, LLC v.*

---

[1]     Public Resources Code, section 21000 et seq. Undesignated statutory references are to the Public Resources Code.

*Board of Trustees of California State University* (2011) 193 Cal.App.4th 675, 682 (*LandValue 77*).) Second, even if CEQA is interpreted to allow for partial certification, it is inappropriate in this case because the CEQA violations affect the adoption of the statement of overriding considerations and, thus, taint the certification of the EIR as a whole. In other words, severance findings under section 21168.9, subdivision (b) are not appropriate in the circumstances of this case.

We therefore affirm the judgment. However, to reduce the potential for further disputes on remand, we direct the trial court to issue an amended writ of mandate with the more detailed instructions set forth in this opinion's disposition.

## FACTS AND PROCEEDINGS

Developer proposed locating a master planned community for persons age 55 or older on a 942-acre site in north central Fresno County near the San Joaquin River. The version of the project approved by the County of Fresno (County) has five phases and includes approximately 2,500 residential units, 250,000 square feet of commercial space, and 460 acres dedicated to open space.

In October 2007, County distributed a notice of preparation of a draft EIR for the project. In August 2010, after the draft EIR was released and public comments received, County issued the final EIR. On February 1, 2011, County's board of supervisors approved the project by adopting resolution No. 11-031, which certified the completion of the final EIR and approved general plan amendment No. 511, which updated the Friant Community Plan (a component of the Fresno County General Plan) and authorized the proposed Friant Ranch Specific Plan.

In March 2011, three nonprofit organizations, Sierra Club, League of Women Voters of Fresno, and Revive the San Joaquin (collectively, plaintiffs), filed a petition for peremptory writ of mandate and complaint for declaratory and injunctive relief. Plaintiffs challenged the approval of the project and certification of the completion of the final EIR by alleging violations of CEQA and of the Planning and Zoning Law (Gov.

3.

Code, § 65000, et seq.) requirement that land use decisions be consistent with the applicable general plan.

In September 2012, after extensive briefing by the parties, the trial court held a hearing on the merits of the petition. In December 2012, the trial court issued its ruling denying plaintiffs' claims and entering judgment in favor of Developer and County. Plaintiffs appealed from the judgment.

*Fifth District Review*

By November 2013, the parties' appellate briefing was complete. Plaintiffs' opening and reply briefs did not analyze the application of section 21168.9 or the formulation of appellate relief for any of the asserted CEQA violations. Instead, the last sentence of each brief simply requested a "writ of mandamus directing the County … to set aside, invalidate and void certification of the EIR for the Friant Ranch Project and all related approvals."[2] The joint respondents' brief did not argue this request for relief

---

[2]  In 2013, such a request in a CEQA appeal was not unusual. For example, the request is consistent with the relief this court granted in a 2011 CEQA case after identifying deficiencies in an EIR that had been upheld by the trial court. (*Chawanakee Unified School Dist. v. County of Madera* (2011) 196 Cal.App.4th 1016.) There, we "remanded to the superior court with directions to vacate its order denying the petition for writ of mandate and to enter a new order that grants the petition for writ of mandate and compels County to (1) set aside the certification of the final EIR, (2) set aside the approvals of the project, and (3) take the action necessary to bring the EIR into compliance with CEQA regarding its analysis of" two topics discussed in our opinion. (*Id*. at p. 1029.)

Other examples include *Save Round Valley Alliance v. County of Inyo* (2007) 157 Cal.App.4th 1437, where the Fourth District instructed the trial court to issue a peremptory writ directing the respondents to "vacate their certification of the EIR and their approval of the project." (*Id*. at p. 1469.) In *Los Angeles Unified School Dist. v. City of Los Angeles* (1997) 58 Cal.App.4th 1019, the Second District instructed the trial court to "issue a peremptory writ of mandate directing the City to vacate its certification of the EIR and approval of the Warner Center Specific Plan." (*Id*. at p. 1031.) More recently, this court directed the trial court to issue a writ of mandate compelling the county "to set aside its certification of the final EIR and its approval of the project." (*Association of Irritated Residents v. Kern County Bd. of Supervisors* (2017) 17

4.

contradicted the requirements of section 21168.9 or was otherwise inappropriate in scope. Instead, Developer and County argued there were no CEQA violations and asserted this court should affirm the trial court's judgment. In short, in the first appeal, Developer and County placed all their eggs in the no-violation basket and made a tactical decision not to address plaintiffs' requested relief.

Following oral argument, this court issued its opinion in May 2014, which was published as *Sierra Club v. County of Fresno*, *supra*, 226 Cal.App.4th 704. Like the trial court, we rejected plaintiffs' claims under the Planning and Zoning Law and the claims under CEQA involving wastewater. However, as described below, we concluded the EIR's discussion of issues relating to air quality was inadequate. (See pts. I.B.2. and I.C., *post*.) Based on this failure to comply with CEQA, our opinion directed the trial court to issue a writ of mandate compelling County to vacate its approval of the project and not approve the project before preparing a revised EIR that cured the CEQA defects. Due to the parties' one-sentence approach to briefing the question of appellate relief, the opinion did not contain a section analyzing the formulation of that relief. (Cf. *King & Gardiner Farms, LLC v. County of Kern* (2020) 45 Cal.App.5th 814, 895–900 [part XII. of our opinion addressed appellate relief and § 21168.9]; *Association of Irritated Residents v. Kern County Bd. of Supervisors*, *supra*, 17 Cal.App.5th at p. 754 [unpublished part of our opinion addressed formulating appellate relief].)

In June 2014, this court denied plaintiffs' petition for a rehearing. Developer did not file a petition for a rehearing. Thus, at that point in the proceedings, Developer did not contend the relief contained in the disposition failed to comply with CEQA or,

---

Cal.App.5th 708, 754.) As explained in part II.B. of this opinion, the phrase "certification of the EIR" is shorthand and does not track the statutory text.

alternatively, this court had omitted an analysis of the appropriate relief, the application of section 21168.9, or the severability issue.**3**

*Supreme Court Review*

In July 2014, Developer filed a petition for review with the California Supreme Court, which was granted in October 2014. A significant procedural question addressed by the Supreme Court was the standard of judicial review applicable to CEQA claims challenging the adequacy of an EIR's discussion of a specific topic. (*Sierra Club, supra*, 6 Cal.5th at pp. 511–516 [standard of review].) Developer argued the substantial evidence standard of review applied to an agency's determination that the EIR was adequate.

In December 2018, the Supreme Court issued its decision. (*Sierra Club, supra,* 6 Cal.5th 502.) On the standard of review question, the court rejected Developer's argument. It concluded the ultimate inquiry "is whether the EIR includes enough detail 'to enable those who did not participate in its preparation to understand and to consider meaningfully the issues raised by the proposed project.' [Citations.]" (*Id.* at p. 516.) The court further concluded this "inquiry presents a mixed question of law and fact" that usually is subject to independent review. (*Ibid*.) However, in situations where factual questions predominate, such as choosing among different methods for analyzing an environmental effect, a more deferential standard is warranted. (*Ibid*.)

On the merits of the CEQA issues addressed, the Supreme Court stated, "we affirm in part and reverse in part the Court of Appeal's judgment and remand the matter

---

**3** Under California Rules of Court, rule 8.500(c)(2), the Supreme Court normally accepts the Court of Appeal's opinion's statement of issues unless the party has called the Court of Appeal's attention to an alleged omission of an issue in a petition for rehearing. (See *Barratt American Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 700, fn. 3 [Supreme Court refused to address issue not addressed by Court of Appeal where appellant did not file a petition for rehearing to bring the deficiency to the court's attention].)

for additional proceedings consistent with this opinion." (*Sierra Club, supra*, 6 Cal.5th at p. 527.) Our interpretation of which parts of our May 2014 opinion were affirmed and which parts were reversed is set forth in an unpublished part of this opinion.

*Remittitur*

On January 31, 2019, the Supreme Court filed a remittitur stating, "that the attached are copies of the original judgment now final entered in the above-entitled cause on December 24, 2018." The next day, this court issued a remittitur to the trial court that stated:

> "This remittitur is issued in the above entitled cause. Also enclosed is a copy of the Supreme Court remittitur, a file-stamped copy of the Supreme Court opinion/order, and a copy of the Fifth Appellate District opinion. [¶] Costs on appeal, whether incurred in proceedings before this court or before the California Supreme Court, are awarded to plaintiffs."

Our remittitur to the trial court trusted that court to interpret accurately what remained of this court's opinion after the partial reversal and decide what terms should be included in the writ of mandate. (See §§ 21003, subd. (f), 21167.1, subd. (a) [expeditious handling of CEQA matters].)

*Writ of Mandate*

On March 19, 2019, the trial court signed and filed a "JUDGMENT GRANTING PETITION FOR WRIT OF MANDATE" and a two-page "PEREMPTORY WRIT OF MANDATE."

The judgment covered the fundamental points without setting forth the specific terms included in the writ. The judgment's three numbered sentences stated (1) the previous judgment was vacated, (2) plaintiffs' "application for writ of mandate, or peremptory writ, [was] granted," and (3) plaintiffs were awarded costs.

The writ of mandate ordered County to promptly "[v]acate or set aside its approval of the Friant Ranch project and not approve the project before preparing a revised EIR that provides an adequate discussion of health and safety problems that will be caused by

7.

the rise in the various pollutants resulting from the Project's development." The writ also stated the trial court retained "jurisdiction over the [proceedings] by way of a return to this peremptory writ of mandate until the court has determined [County] has complied with the provisions of the [CEQA] and the opinion of the Court of Appeal as modified by the Opinion of the Supreme Court."

*Post-Writ Proceedings*

On May 31, 2019, Developer and County jointly filed a motion to vacate and reconsider judgment and writ that cited Code of Civil Procedure section 663, subdivision (1). Developer and County argued (1) public policy militates against vacating all of the project approvals, (2) trial courts must issue narrowly tailored remedies in CEQA cases, and (3) the facts in this case support findings of severability and, thus, the issuance of a limited writ.

On August 29, 2019, after a stipulated four-week continuance and the filing of an opposition and reply, the trial court issued a four-page tentative ruling providing a detailed analysis of its reasons for denying the motion. Among other things, the tentative ruling stated that "the project's operational effects on air quality are not severable from the remainder of the EIR." That same day, Developer filed a notice of appeal to prevent its appeal from being untimely.

On August 30, 2019, the trial court held a hearing on the motion to vacate and reconsider judgment and writ. The law and motion minute order filed after the hearing adopted the tentative ruling as the order of the court and stated no further order was necessary. The effect (if any) of this minute order, which was issued after Developer filed its notice of appeal, is immaterial to the outcome of this appeal.

**DISCUSSION**

I.  INTERPRETING THE COMBINED OPINIONS*

    A.    <u>Basic Principles</u>

        *1.    Impact of Supreme Court Review*

When the Supreme Court granted review of our May 2014 decision, the law held that, generally, a grant of review by the California Supreme Court nullifies the opinion of the Court of Appeal and causes it to no longer exist.  (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 109.)[4]  An exception to this general rule is set forth in the statement that "[w]ithout some further act of approval or adoption by the Supreme Court, the opinion and decision were 'of no more effect as a judgment or as a precedent to be followed in the decision of legal questions that may hereafter arise than if they had not been written.' " (*Ibid*.)  We interpret this exception about a "further act of approval or adoption by the Supreme Court" to mean that when a Court of Appeal's judgment is affirmed in part and reversed in part, the affirmed portion still governs the dispute between the parties while the reversed portion remains a nullity with no force or effect.

This interpretation of the principles governing the effect of the Supreme Court's grant of review is consistent with the principles applied to a partial reversal where the appeal was taken from the whole judgment.  (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 889, p. 950.)  Over a century ago, our Supreme Court stated:  "The practice of reversing a judgment in part only … should be followed where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues."  (*Gray v. Cotton* (1913) 166 Cal. 130, 139.)  In *Gray*, the findings on the second, third and fifth causes of action were upheld on appeal and the

---

*    See footnote, *ante,* page 1.

[4]    The amendment to California Rules of Court rule 8.1115 that took effect on July 1, 2016, and addressed the consequences of the Supreme Court granting review of an opinion published by the Court of Appeal is not applicable to this case.

partial reversal affected only the first cause of action, which was remanded for a retrial. (*Ibid.*)

## 2. Remittitur

The grant of review by our Supreme Court begins its involvement with the merits of a lawsuit. This involvement ends when the Supreme Court issues its remittitur. Thus, unlike Developer's approach, our evaluation of the Supreme Court's impact on our May 2014 opinion extends to the principles defining the effect of remittiturs issued by the Supreme Court. We also consider the effect of our remittitur on subsequent proceedings in the trial court.

An appellate court's decision usually is embodied in the disposition section of its opinion, which constitutes the judgment on appeal. (*Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 312.) The orders and directions of the appellate court are set forth in the disposition, which is conveyed to the trial court by the remittitur and must be followed on remand. (*Id.* at pp. 312–313.) The remittitur defines the scope of the jurisdiction of the court to which the matter is returned. (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859 (*Ayyad*).)

Here, this court initially reversed the trial court's judgment and remanded with directions and the Supreme Court subsequently affirmed part of our decision and remanded with instructions for further proceedings consistent with its opinion. (*Sierra Club*, *supra*, 6 Cal.5th at p. 527.) As background for our discussion of this type of disposition, we note that an unqualified reversal (i.e., a reversal without directions) ordinarily vacates the judgment and leaves the case "at large" for further proceedings as if it had never been tried and no judgment had been entered. (*Saller v. Crown Cork & Seal Co., Inc.* (2010) 187 Cal.App.4th 1220, 1238.) In contrast, "when an appellate court remands a matter with directions governing the proceedings on remand, 'those directions

10.

are binding on the trial court and *must* be followed. Any material variance from the directions is unauthorized and void.'" (*Ayyad, supra,* 210 Cal.App.4th at p. 860.)

Based on these principles, we conclude this court was required to follow the directions transmitted in the Supreme Court's remittitur. In turn, the trial court was bound by the directions contained in our February 2019 remittitur, which incorporated the Supreme Court's decision.

### 3. Interpretation and Standard of Review

A major issue in this appeal is the proper interpretation of the February 2019 remittitur issued by this court. Whether a trial court has correctly interpreted the dispositional language in a prior appellate opinion in the action is an issue of law subject to de novo review. (*Ayyad, supra*, 210 Cal.App.4th at p. 859; *Ducoing Management, Inc. v. Superior Court*, *supra*, 234 Cal.App.4th at p. 313 [interpretation of appellate opinion is an issue of law]; see *Leese v. Clark* (1865) 28 Cal. 26, 36 [whether judgment of lower court was entered in accordance with Supreme Court's directions was a question of law, not fact].) "The trial court's interpretation of those directions is not binding on us. [Citation.] We look to the wording of our directions to determine whether the trial court's order comports with them. [Citation.] When, as in this case, the reviewing court remands the matter for further proceedings, its directions must be read in conjunction with the opinion as a whole." (*Ayyad, supra,* at p. 859.) In other words, "[i]t is the substance of the opinion that controls" and that substance is determined by considering the entire opinion. (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1500.)

We conclude these basic rules governing the interpretation of appellate opinions extend to the instant appeal, which involves determining the combined effect of the Supreme Court's opinion and the parts of this court's decision that were affirmed.

B.	Overview of Our Disposition

Our approach to the questions of interpretation is chronological, beginning with the language used in our May 2014 opinion's disposition, before addressing the Supreme Court's December 2018 opinion, and the subsequent remittiturs.[5] Not all the language in our disposition is a source of controversy. The language that both sides agree was either affirmed or reversed is set forth here to provide context for the specific issues raised by Developer.

1.	Issuance of a Writ

It is undisputed that the first and third paragraphs of our disposition were not affected by the partial reversal. The first paragraph stated: "The judgment is reversed

---

[5]	In September 2019, after receiving the notice of appeal, this court sent counsel for the parties a letter stating:

> "Based on the priority given to CEQA cases, the age of this case which was commenced in 2014, and the fact this court is in a much better position than counsel to know the intention underlying the court's actions, the court is providing counsel with this letter to explain what it intended when it issued its remittitur after receiving the California Supreme Court's opinion. This court intended and expected the superior court to issue a writ of mandate directing the County to take the following steps to implement this court's decision, as modified by the California Supreme Court:

> "(1) Vacate or set aside its approval of the Friant Ranch project and not approve the project before preparing and certifying [the completion of] a revised EIR that cures (a) the defects in the analysis of Impact #3.3.2, which addresses the adverse human health impacts that are likely to result from the air quality impacts identified in the EIR, and (b) the defects in the discussion of proposed Mitigation Measure #3.3.2, which discussion stated the implementation of the proposed measure 'shall substantially reduce air quality impacts related to human activity with[in] the entire Project area but not to a level that is less than significant .…' "

The letter provided an explanation for including those terms in the writ of mandate issued on remand and also noted the deficiencies in the EIR's statement that mitigation measure No. 3.3.2 would "substantially reduce air quality impact …" were discussed in part B.1. of the Supreme Court's opinion and part IV.C.5. of our May 2014 opinion. The letter's last paragraph stated: "Having clarified the intent underlying this court's issuance of remittitur, the parties may proceed with this appeal as they see fit."

12.

and the matter remanded for further proceedings. The superior court is directed (1) to vacate its decision denying the petition for writ of mandate and (2) to enter a new order that grants the petition for writ of mandate." The parties agree that the trial court was required to issue a writ of mandate.

The third paragraph of the disposition restated the requirement in section 21168.9, subdivision (b) that the trial court retain jurisdiction over the proceedings conducted by the public agency to comply with the writ of mandate. A provision mentioning the procedural step of a return to the writ is routine and it is not disputed in this appeal.

### 2. *Terms of the Writ*

Developer's claims of error center on the second paragraph of our May 2014 disposition, which set forth the writ of mandate's directions to County by stating:

> "The superior court shall issue a peremptory writ of mandate that compels County to vacate or set aside it[s] approval of the Friant Ranch project and directs County not to approve the project before preparing a revised EIR that (1) contains an analysis of the adverse human health impacts that are likely to result from the air quality impacts identified in the EIR; (2) addresses the deficiencies concerning vagueness, enforceability and lack of specific performance standards in Mitigation Measure #3.3.2; and (3) addresses the issues related to the statement that those mitigation provisions will *substantially* reduce air quality impacts."

For purposes of this appeal, we divide these directions into two main topics: (1) the vacatur of the approval of the project and (2) the specific corrective actions needed to cure the defects in the EIR. We begin with the three enumerated corrective actions and determine which were affirmed and which were reversed. We then examine whether our direction to vacate the board of supervisor's approval of the project remained in effect or, alternatively, was reversed.

13.

C.  Corrective Actions

1.  *Human Health Impact of Air Pollutants*

The first of the enumerated corrective actions addresses the EIR's analysis of the adverse human health impact likely to result from the project's adverse impact on air quality.  Corrective action on this topic is required by the Supreme Court's decision, the "CONCLUSION" of which states in part:

> "The EIR fails to provide an adequate discussion of health and safety problems that will be caused by the rise in various pollutants resulting from the Project's development.  At this point, we cannot know whether the required additional analysis will disclose that the Project's effects on air quality are less than significant or unavoidable, or whether that analysis will require reassessment of proposed mitigation measures.  Absent an analysis that reasonably informs the public how anticipated air quality effects will adversely affect human health, an EIR may still be sufficient if it adequately explains why it is not scientifically feasible at the time of drafting to provide such an analysis."  (*Sierra Club*, *supra*, 6 Cal.5th at p. 527.)

We interpret the Supreme Court's decision to mean the EIR's discussion of "health and safety problems that will be caused by the rise in various pollutants resulting from the Project's development" must be corrected.  Consequently, we conclude the Supreme Court affirmed the part of our opinion requiring such a correction but provided additional, binding directions as to what that correction might contain.  The trial court interpreted the combined effect of the appellate opinions by issuing a writ of mandate stating the revised EIR must provide "an adequate discussion of health and safety problems that will be caused by the rise in various pollutants resulting from the Project's development."  This provision is not a source of dispute because the writ of mandate proposed by Developer also required the revision of the EIR's discussion of these health and safety problems.  Consequently, the trial court's writ of mandate properly directed County to prepare "a revised EIR that provides an adequate discussion of health and

14.

safety problems that will be caused by the rise in the various pollutants resulting from the Project's development."

### 2. *Vagueness, Enforceability and Specific Performance Standards*

The second of the three corrective actions enumerated in our May 2014 disposition required the EIR be revised to "address[] the deficiencies concerning vagueness, enforceability and lack of specific performance standards in Mitigation Measure #3.3.2." No one disputes that the Supreme Court determined the mitigation measure No. 3.3.2 was not vague, was enforceable, and contained performance standards that were adequate. Consequently, the second enumerated corrective action in our disposition was reversed and vacated. Accordingly, the trial court properly excluded that corrective action from the writ of mandate.

### 3. *"Substantially" Reduced Air Quality Impacts*

The third enumerated corrective action in our May 2014 disposition is a source of controversy. The corrective action deals with the EIR's statement that certain mitigation measures will *substantially* reduce air quality impacts. Specifically, the EIR's description of mitigation measure No. 3.3.2 begins with the following paragraph:

> "**Mitigation Measure #3.3.2:** Implementation of the following mitigation measures will *substantially* reduce air quality impacts related to human activity within the entire Project area, but not to a level that is less than significant." (Italics added.)

After setting forth the particular measures, the description of mitigation measure No. 3.3.2 ends with the following paragraph:

> "**Effectiveness of Mitigation:** The above mitigation measures would reduce project air quality impacts, but not below the SJVAPCD thresholds of significance; therefore, project impacts on air quality would be *significant and unavoidable*."

The EIR's paragraph explicitly labeled to address the effectiveness of the mitigation measures did not repeat the opening paragraph's factual assertion that the

measure would "*substantially* reduce air quality impacts." (Italics added.) Our May 2014 opinion stated that we could not discern whether the use of the term "substantially reduce" was supported by any evidence or, alternatively, lacked evidentiary support. We also stated that we could not discern whether the term was included inadvertently or as an intentional attempt to mislead the reader. We determined "the statement that the measure will *substantially* reduce air quality impacts is a bare conclusion and, in this case, is not supported by facts or analysis as required by the disclosure principles" articulated by this court in *Association of Irritated Residents v. County of Madera* (2003) 107 Cal.App.4th 1383, at pages 1390 through 1391 (EIR must contain facts and analysis, not just bare conclusions). As guidance for the proceedings on remand, we stated that "if County reasserts its position that the reductions in emissions will be substantial, it should include enough facts and analysis in the EIR to allow a reviewing court to determine whether that finding of fact is supported by substantial evidence." We ended our discussion of the topic by stating: "In summary, on remand, the assertion of fact in Mitigation Measure #3.3.2 that the reduction in air quality impacts will be substantial should be either explained or deleted."

The Supreme Court addressed the EIR's assertion that the mitigation measure would substantially reduce air quality impacts in part B.1. of its opinion. (*Sierra Club*, *supra*, 6 Cal.5th at p. 522.) Those three paragraphs stated:

> "At the outset of the discussion of proposed mitigation measure No. 3.3.2 (discussed more fully … [below]), the EIR stated that 'Implementation of the following mitigation measures shall substantially reduce air quality impacts related to human activity within the entire Project area but not to a level that is less than significant ….'

> "The Court of Appeal concluded that the EIR's use of the term 'substantial' to describe the impact the proposed mitigation measures would have on reducing the Project's significant health effects, without further explanation or factual support, amounted to a 'bare conclusion' that did not satisfy CEQA's disclosure requirements.

"We agree with the Court of Appeal on this point. (See *Laurel Heights* [*Improvement Assn. v. Regents of University of California* (1988)] 47 Cal.3d [376,] 404 [' "To facilitate CEQA's informational role, the EIR must contain facts and analysis, not just the agency's bare conclusions or opinions." '].) Here, the EIR included no facts or analysis to support the inference that the mitigation measures will have a quantifiable 'substantial' impact on reducing the adverse effects. The EIR must accurately reflect the net health effect of proposed air quality mitigation measures. (*Cleveland National Forest* [*Foundation v. San Diego Assn. of Governments* (2017)] 3 Cal.5th [497,] 514 ['an EIR's designation of a particular adverse environmental effect as "significant" does not excuse the EIR's failure to reasonably describe the nature and magnitude of the adverse effect'].)" (*Sierra Club*, *supra*, 6 Cal.5th at p. 522.)

Interpreting the Supreme Court's opinion as a whole, we conclude the statement that "[w]e agree with the Court of Appeal on this point" means the EIR's statement that the mitigation measures would " 'substantially reduce air quality impacts related to human activity' " was "a 'bare conclusion' that did not satisfy CEQA's disclosure requirements." (*Sierra Club*, *supra*, 6 Cal.5th at p. 522.) Because the unexplained "substantially reduce" statement did not satisfy CEQA's disclosure requirements, we also conclude the statement must be corrected in any revised EIR circulated by County. In other words, the Supreme Court affirmed, rather than reversed, our determination that, "on remand, the assertion of fact in Mitigation Measure #3.3.2 that the reduction in air quality impacts will be substantial should be either explained or deleted."**6**

Developer's arguments to the contrary are unconvincing because they do not consider the Supreme Court's opinion as a whole. Developer focuses on the first sentence in the "CONCLUSION" of the Supreme Court's opinion, which states: "In our view, the EIR's air quality impacts discussion and its mitigation measures meet CEQA requirements for specificity and enforceability with *one exception*: The EIR fails to provide an adequate discussion of health and safety problems that will be caused by the

---

**6** If the Supreme Court had stated this defect caused no prejudice, it would have implied the defect did not need correction on remand.

17.

rise in various pollutants resulting from the Project's development." (*Sierra Club*, *supra*, 6 Cal.5th at p. 527, italics added.) We conclude this sentence's reference to "one exception" is limited and, therefore, does not mean the exception described the only CEQA violation needing correction on remand. In particular, the limitation is expressed in the prepositional phrase in the reference to "CEQA requirements *for specificity and enforceability*." (*Ibid.,* italics added; see § 21081.6, subd. (b) [mitigation measures shall be "fully enforceable"]; Guidelines, §§ 15126.4 [mitigation measures], 15146 [degree of specificity].)[7] CEQA's basic disclosure requirements, rather than its *requirements for specificity and enforceability*, were violated by the unexplained conclusion that mitigation measures would " 'substantially reduce air quality impacts related to human activity.' " (*Sierra Club*, *supra*, 6 Cal.5th at p. 522.) Accordingly, the Supreme Court's reference to "one exception" does not mean the third enumerated corrective action in the May 2014 disposition was unnecessary to achieve CEQA compliance on remand.

### 4. Summary

The Supreme Court affirmed two of the corrective actions set forth in our opinion. First, the EIR failed "to provide an adequate discussion of health and safety problems that will be caused by the rise in various pollutants resulting from the Project's development." (*Sierra Club*, *supra*, 6 Cal.5th at p. 527.) Consequently, a revised EIR must include "an analysis that reasonably informs the public how anticipated air quality effects will adversely affect human health[ or, alternatively,] adequately explains why it is not scientifically feasible at the time of drafting to provide such an analysis." (*Ibid.*)

Second, the EIR's bare conclusion that "mitigation measures will *substantially* reduce air quality impacts related to human activity within the entire Project area" must

---

[7] "Guidelines" refers to the regulations that implement CEQA and are set forth in California Code of Regulations, title 14, section 15000 et seq.

be either explained or deleted.[8]  (Italics added.)  A writ of mandate requiring such a correction is part of the "additional proceedings consistent with this opinion"—more specifically, part B.1. of the Supreme Court's opinion.  (*Sierra Club*, *supra*, 6 Cal.5th at pp. 522, 527.)

### D.  Vacating Approval of the Project

#### 1.  *Contentions*

Developer contends the trial court was not obligated on remand to issue a writ requiring County to vacate the project's approvals.  Developer also contends "the trial court abused its discretion to the extent it found it was bound by [the] directions on remand [in the Fifth District's May 2014 opinion.]"  In Developer's view, because the Supreme Court granted review, "it is as if the appellate court 'never wrote that opinion.' " Developer rephrases this argument by asserting "[t]he Supreme Court's judgment should be construed as superseding the appellate court's holding as to the remand proceedings."

#### 2.  *Issues Presented*

As previously stated, the trial court was bound by the remittitur issued by this court.  (See pt., I.A.2., *ante*.)  That remittitur attached the Supreme Court's opinion and this court's May 2014 opinion.  Accordingly, interpreting the remittitur necessarily involves interpreting the combined effect of those two opinions.  Our interpretative process includes three steps.  First, we identify the Supreme Court's intent, if any, on the question of vacating the project's approval.  Second, we describe the intent underlying

---

**8**    If an explanation is provided, it should address all the "air quality impacts related to human activity within the entire Project area" that are substantially reduced and should not be limited to impacts on human health and safety.  In other words, the quoted phrase does not refer only to impact of air pollution on human health and safety.  The word "related" means "[c]onnected in some way."  (Black's Law Dict. (11th ed. 2011).) Therefore, as drafted, the quoted phrase includes air quality impacts arising from (i.e., caused by) the increase in human activity within the project area that is attributable to the project.

our remittitur to the trial court.  Third, in part II. of this opinion, we explain why the outcome we intended complied with CEQA.

### 3. *Supreme Court's Intent Relating to the Project's Approval*

The Supreme Court did not discuss the contents of the writ of mandate to be issued on remand or any aspect of the application of section 21168.9.  With no explicit discussion or directions on this point, we consider what inferences to draw from the Supreme Court's decision to "remand the matter for additional proceedings consistent with this opinion." (*Sierra Club*, *supra*, 6 Cal.5th at p. 527; see generally, 9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 885–886, pp. 946–947 [appellate judgment directing further proceedings in conformity with opinion; criticism of this type of direction].)  The Supreme Court's statement about additional proceedings is general.  In the context of the one-sentence approach to briefing the remedy issue in this court, that general statement supports the inference that the Supreme Court never formed any intent about whether the board of supervisor's approval of the project should be vacated.  Concluding otherwise would indulge a fiction.  Thus, we conclude the Supreme Court's intent did not extend beyond requiring the subsequent proceedings on remand (1) to not contradict its opinion and (2) to comply with applicable law—that is, CEQA.

### 4. *Intent Underlying This Court's Remittitur*

When this court issued its remittitur to the trial court on February 1, 2019, we intended the trial court to follow the direction in our May 2014 opinion's disposition stating "[t]he superior court shall issue a peremptory writ of mandate that compels the County to vacate or set aside it[s] approval of the Friant Ranch project .…"  Thus, the writ of mandate issued by the trial court complied with our intent.  Consequently, the critical question in this appeal is whether our intended outcome complied with CEQA.

20.

II.     COMPLIANCE WITH CEQA

　　　A.     <u>Vacating Approval of the Project</u><sup>*</sup>

Developer contends the writ of mandate should not have ordered all the project's approvals vacated because such a broad order does not comply with section 21168.9. Developer argues the trial court should have issued a limited writ "leaving all or most of the Project's approvals in place." (Boldface omitted.) We disagree.

　　　　　1.     *Language in the Writ*

The trial court's writ of mandate directed the County to "[v]acate or set aside its approval of the Friant Ranch project and not approve the project before preparing a revised EIR .…" The writ's language tracks the disposition in our May 2014 opinion, which stated: "The superior court shall issue a peremptory writ of mandate that compels County to vacate or set aside it[s] approval of the Friant Ranch project and directs County not to approve the project before preparing a revised EIR .…"

The writ and our disposition used the term "approval," which is singular. Developer's argument refers to "approvals," which is plural. Consequently, to address the argument that all or most of the project approvals should have been left in place, we must determine what Developer means by the project's "approvals."

Developer appears to interpret the writ's phrase "approval[] of the Friant Ranch project" to mean the writ "requires the County of Fresno (County) to vacate all of the approvals for the Friant Ranch Community Plan Update and Friant Ranch Specific Plan (Project) .…" Our May 2014 opinion defined the term "Project" in its introductory sentence: "In February 2011, the County of Fresno (County) approved the Friant Ranch project, a proposed master-planned community for persons age 55 or older located in north-central Fresno County (the Project)." Later in the opinion, we described the approval of the project by stating: "On February 1, 2011, County's board of supervisors

---

<sup>*</sup>     See footnote, *ante,* page 1.

21.

approved the Project by adopting resolution No. 11-031, which certified the final EIR and approved General Plan Amendment No. 511, which updated the Friant Community Plan (a component of the Fresno County General Plan) and authorized the proposed Friant Ranch Specific Plan."

Developer did not designate the administrative record as part of the record on appeal.[9] As a result, the contents of the board of supervisor's resolution is not available for our review. Thus, for purposes of this appeal, we rely on our earlier description of the project approvals. Based on that description, we accept Developer's assertion that the project approvals include the approval of the updated Friant Community Plan and the Friant Ranch Specific Plan and the writ directs action that would set aside the approval of both of those planning documents.

### 2. Usual Approach to Project Approvals

" 'In most cases, when a court finds that an agency has violated CEQA in approving a project, it issues a writ of mandate requiring the agency to set aside its CEQA determination, to set aside the project approvals, and to take specific corrective action before it considers reapproving the project. See, *e.g., Nelson v County of Kern* (2010) 190 [Cal.App.4th] 252, 285[.]' " (*King & Gardiner Farms, LLC v. County of Kern, supra,* 45 Cal.App.5th at p. 896 [board of supervisor's approval of a local ordinance set aside].) Under the usual approach, the EIR's CEQA violations would result in a writ of mandate requiring the County to vacate the project approvals. This court's remittitur and the trial court's writ followed the usual approach, which contradicts

---

[9] "[T]he burden is on appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [fundamental principle of appellate procedure].) When an appellant fails to provide an adequate record on an issue, the issue is resolved against the appellant. (*Id*. at p. 609.)

22.

Developer's argument that all or most of the project approvals should have been left in place.

### 3. *Remedial Action Authorized by Statute*

Developer's argument for a limited writ of mandate is based on section 21168.9, which governs the judicial remedies for CEQA violations. (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 756 (*POET I*).) The statute requires the courts to issue a peremptory writ of mandate to remedy each failure to comply with CEQA. (*Ibid.*)

Subdivision (a) of section 21168.9 refers to the corrective action as "mandate[s]" and identifies three different types of actions that may be required of the public agency. (*POET I*, *supra*, 218 Cal.App.4th at p. 757.) One or more of these mandates must be included in the court's order. The agency may be directed (1) to void, in whole or in part, a determination, finding or decision made in violation of CEQA, (2) to "suspend any or all specific project activity or activities" if certain conditions exist, or (3) to take specific action necessary to bring the determination, finding or decision tainted by the CEQA violation into compliance with CEQA.[10] We interpret section 21168.9 to mean that the

---

[10] The full text of subdivision (a) of section 21168.9 provides:

"(a) If a court finds, as a result of a trial, hearing, or remand from an appellate court, that any determination, finding, or decision of a public agency has been made without compliance with [CEQA], the court shall enter an order that includes one or more of the following:

"(1) A mandate that the determination, finding, or decision be voided by the public agency, in whole or in part.

"(2) If the court finds that a specific project activity or activities will prejudice the consideration or implementation of particular mitigation measures or alternatives to the project, a mandate that the public agency and any real parties in interest suspend any or all specific project activity or activities, pursuant to the determination, finding, or decision, that could result in an adverse change or alteration to the physical environment, until the public agency has taken any actions that may be necessary to bring the determination, finding, or decision into compliance with this division.

23.

approval of a project is a "decision" that may be "voided … in whole or in part." (§ 21168.9, subd. (a)(1).) Thus, the direction to County to set aside the project approvals is among the corrective action authorized by section 21168.9. As a result, the next step in applying section 21168.9 to the facts presented considers whether that corrective action was contrary to any of section 21168.9's limitations.

### 4. *Statutory Limitations on Remedial Action*

Section 21168.9 explicitly limits the authority of courts in fashioning a remedy for CEQA violations. A court "shall include only those mandates which are necessary to achieve compliance with [CEQA] and only those specific project activities in noncompliance with [CEQA]." (§ 21168.9, subd. (b).) The statute explains the scope of this limitation by stating:

> "However, the order shall be limited to that portion of a determination, finding, or decision or the specific project activity or activities found to be in noncompliance *only if* a court finds that (1) the portion or specific project activity or activities are severable, (2) severance will not prejudice complete and full compliance with [CEQA], and (3) the court has not found the remainder of the project to be in noncompliance with [CEQA]." (§ 21168.9, subd. (b), italics added.)

The board of supervisor's approval of the project constitutes a "decision" for purposes of section 21168.9 Thus, the project approvals do not qualify as a "specific project activity or activities" for purposes of subdivisions (a)(2) or (b) of section 21168.9. Restating Developer's argument using the statutory text, the writ of mandate should have been "limited to that portion of [the project approvals] found to be in noncompliance only if … (1) the portion [of the project approvals is] severable, (2) severance will not prejudice complete and full compliance with [CEQA], and (3) … the remainder of the project [complies] with [CEQA]." (§ 21168.9, subd. (b).) The three statutory conditions

---

"(3) A mandate that the public agency take specific action as may be necessary to bring the determination, finding, or decision into compliance with this division."

are linked with the word "and." Consequently, each condition must be satisfied before some of the project's approvals may be left in place. (See *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 390–391 [statutory criteria linked by "and"].)

### 5. Application of Statutory Text

First, we reject Developer's contention that *all* the project approvals should have been left in place. Approval of a CEQA project that may have one or more significant environmental effects requires the preparation and certification of an EIR that complies with CEQA "before approving or proceeding with the project." (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1187; see Guidelines, §§ 15089 [preparation], 15090 [certification], 15092, subd. (b)(2)(B) [approval of project with significant environmental effect based on overriding concerns].) In *Center for Biological Diversity v. Department of Fish & Wildlife* (2017) 17 Cal.App.5th 1245 (*Center for Biological Diversity III*), the court concluded that, "[u]nder section 21168.9, the trial court has the authority to leave some project approvals in place when decertifying portions of an EIR, so long as it appropriately finds the portions severable under section 21168.9, subdivision (b)." (*Id*. at p. 1256.) This conclusion does not establish the principle that *all* project approvals may be left in place when an EIR fails to comply with CEQA. Thus, Developer's reliance on *Center for Biological Diversity III* does not support its contention that *all* project approvals should have been left in place.

Second, we consider whether a portion of the project approvals may be severed from the remaining project approvals and, as a result, whether *some* project approvals should be left in place. As stated in *POET, LLC v. State Air Resources Bd.* (2017) 12 Cal.App.5th 52, the statute does not set forth a test for severability. (*Id*. at p. 92.) Here, we conclude the severability of a decision, such as the decision to approve a project, contains portions that are severable if those portions of the decision were not affected by

the CEQA violation or violations.  Applying this test to the instant case, we conclude the decision to approve the project was not severable.

The CEQA violations relate to air quality impacts, which will be significant even with the mitigation measures.  Developer contends "[t]he only portions of the Project approvals that relate directly to the EIR's analysis of air quality health and safety impacts caused by the Project's operational emissions are the County certification of the EIR with respect to its discussion of Impact 3.3.1 and the County's Finding of Fact and Statement of Overriding Considerations for that impact."

Statements of overriding considerations are addressed in Guidelines section 15093, which provides:

> "(a) CEQA requires the decision-making agency to balance, as applicable, the economic, legal, social, technological, or other benefits, including region-wide or statewide environmental benefits, of a proposed project against its unavoidable environmental risks when determining whether to approve the project.  If the specific economic, legal, social, technological, or other benefits, including region-wide or statewide environmental benefits, of a proposal project outweigh the unavoidable adverse environmental effects, the adverse environmental effects may be considered 'acceptable.' "

Under this provision, the board of supervisors weighed the benefits of the project "against its unavoidable environmental risks when [it decided] to approve the project." (Guidelines, § 15093, subd. (a).)  Because of the EIR's defects, the balancing performed by the board of supervisors was not fully informed as to the project's "unavoidable environmental risks." (*Ibid*.)  Thus, the outcome of that balancing was tainted by the incomplete information provided by the EIR.  At this point in the proceedings, an appellate or trial court cannot place itself in the board of supervisor's position and perform the required, untainted balancing, much less predict what balance will be struck when a fully informed board of supervisors decides the issue.  A fully informed balancing will require a revised EIR correcting the defects and explaining the risks, if it is possible

26.

to do so, that the air quality impacts pose for human health and safety. Once the board of supervisors is properly informed, it can strike a balance "regarding the costs and benefits of the Project" (*Sierra Club*, *supra*, 6 Cal.5th at p. 510) and decide whether to go forward with the proposed development.

Developer argues the approval of the updated Friant Community Plan and the Friant Ranch Specific Plan should be left in place because they are planning documents that, in themselves, do not cause any physical change in the environment. We reject this argument because, under the test for severability adopted in this opinion, Developer has not demonstrated the approvals of those planning documents were not affected by the tainted weighing process that resulted in the adoption of a statement of overriding considerations. In other words, we cannot speculate that the board of supervisors would have approved those planning documents even if they rejected the proposed development because its environmental risks outweighed its benefits. Consequently, the approval of the planning documents would not "be in full compliance with CEQA" (*Center for Biological Diversity III*, *supra*, 17 Cal.App.5th at p. 1253) without a full analysis of the air quality impacts that the planning documents are likely to encourage. (See Guidelines, § 15358, subd. (a)(2) [relevant environmental effects or impacts include indirect or secondary effects that are reasonably foreseeable].) In addition, leaving the approval of the planning documents in place may establish bureaucratic momentum that creates incentives to ignore environmental concerns, which would influence the balancing process underlying the adoption of a statement of overriding considerations. (See *Save Tara v. City of Hollywood* (2008) 45 Cal.4th 116, 135 [delaying the start of environmental review results in more bureaucratic and financial momentum behind a proposed project, which creates incentives to ignore environmental concerns that could have been addressed earlier].)

Consequently, as we impliedly determined when issuing the remittitur, the project approvals are not severable. Therefore, the trial court's writ of mandate requiring the vacatur of the approvals did not violate the requirements of section 21168.9.

B. Certification of EIR and Partial Decertification

Developer contends the trial court should have issued a limited writ of mandate "partially decertifying the EIR." As support, Developer cites a decision stating that "[s]ection 21168.9, subdivision (a) clearly allows a court to order partial decertification of an EIR." (*Center for Biological Diversity III, supra,* 17 Cal.App.5th at p. 1252).)

Developer's contention about partial decertification raises a question of statutory interpretation involving sections 21100, 21151 and 21168.9. We begin by setting forth the statutes and Guideline provisions addressing certification.

1. *Statutory and Regulatory Text*

Section 21100, subdivision (a) provides: "All lead agencies shall prepare … and *certify the completion of*[] *an environmental impact report* on any project which they propose to … approve that may have a significant effect on the environment." (Italics added.) Section 21151, subdivision (a) replaces the word "lead" with "local" and restates the foregoing directive: "All local agencies shall prepare … and *certify the completion of*[] *an environmental impact report* on any project that they intend to … approve which may have a significant effect on the environment." (Italics added.)

Guidelines section 15090, subdivision (a) expands on CEQA's certification provisions by identifying the things an agency must certify. "Prior to approving the project the lead agency shall certify that: [¶] (1) The final EIR has been completed in compliance with CEQA." Also, the lead agency must certify that the final EIR was presented to its decisionmaking body, that body reviewed and considered the information in the final EIR prior to approving the project, and the final EIR reflects the lead agency's independent judgment and analysis. (Guidelines, § 15090, subds. (a)(2), (a)(3).)

28.

To summarize, what public agencies are required to "certify" to satisfy the statutes is "the completion of" the EIR. (§§ 21100, subd. (a), 21151, subd. (a).) The Guidelines explain this requirement by stating the agency must certify "[t]he final EIR has been *completed* in compliance with CEQA." (Guidelines, § 15090, subds. (a)(1), italics added.)

Section 21168.9, subdivision (a) provides that if a court finds "any determination, finding, or decision of a public agency has been made without compliance with [CEQA], the court shall enter an order that includes one or more of the following: [¶] (1) A mandate that the determination, finding, or decision be voided by the public agency, in whole or *in part*." (Italics added.) A court's authority to void an agency determination "in part" is the textual basis for the concept of partial decertification.

### 2. Case Law

In *LandValue 77*, *supra*, 193 Cal.App.4th 675, this court addressed the meaning of the statutory and regulatory language governing certification and its relationship with section 21168.9. (*Land Value 77, supra,* at p. 682.) We concluded: "The wording of the guideline and statutes indicates that a final EIR should not be certified if it is not complete or in compliance with CEQA." (*Ibid*.) In *LandValue 77*, the project proponent argued that vacating the entire certification was not "necessary" for purposes of section 21168.9, subdivision (b) and certification was an agency decision that could "be voided 'in part.' " (*LandValue 77*, *supra*, at p. 682.) We disagreed with the proponent's statutory construction and "reject[ed] the idea of partial certification." (*Ibid*.) Under our interpretation, CEQA and the "Guidelines provide for the certification of an EIR when it is complete, and the concept of completeness is not compatible with partial certification. In short, an EIR is either complete or it is not." (*LandValue 77*, *supra*, at p. 682.) We supported this interpretation by quoting Justice Robie's treatise:

> " 'In contrast to a case where severance is proper, a situation may arise
> where an EIR is inadequate in some respects, but not others. This requires

the local agency to set aside all project approvals and the certification of the EIR, but the writ of mandate need only require the preparation, circulation and consideration under CEQA of a legally adequate EIR on limited issues.' (Robie et al., Cal. Civil Practice: Environmental Litigation (2010) § 8:33, p. 61.)" (*Id.* at pp. 681–682.)

The statutory interpretation adopted in *LandValue 77*, which holds it is an oxymoron to conclude an agency can partially "certify the completion of" an EIR, has been questioned. For example, in dicta the Fourth District criticized *LandValue 77*'s rejection of partial certification of an EIR's completeness. (*Preserve Wild Santee v. City of Santee* (2012) 210 Cal.App.4th 260, 289.) More recently, the Second District addressed the argument that "section 2168.9 prohibits partial decertification of an EIR" and concluded partial decertification was "legally permissible under CEQA." (*Center for Biological Diversity III*, *supra*, 17 Cal.App.5th at p. 1249, fn. omitted.) The court stated: "Section 21168.9, subdivision (a) clearly allows a court to order partial decertification of an EIR following a trial, hearing, or remand." (*Id.* at p. 1252.) The court did not acknowledge or analyze the language in sections 21100 or 21151 stating that what an agency certifies is "the completion of" the EIR. Similarly, the court did not address the language in Guidelines section 15090, subdivision (a) stating the agency shall certify the "EIR has been completed in compliance with CEQA." As a result, the court did not explain how an agency can "certify the completion of"[11] an EIR "in part"[12] when the EIR is not, in fact, completed in compliance with CEQA. Stated from another perspective, the court's interpretation renders the phrase "the completion of" surplusage—that is, useless or devoid of meaning. (See *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 54 [statutory interpretation that renders terms surplusage should be avoided].)

---

[11]     Sections 21100, subdivision (a) and 21151, subdivision (a).

[12]     Section 21168.9, subdivision (a)(1).

### 3. Rejection of Partial Certification

The statutory interpretation adopted in *LandValue 77* provides one ground for rejecting Developer's contention that the trial "court should have issued a limited writ ordering the County to rescind certification of the EIR's operational air quality analysis .…" Developer rephrases this contention by asserting the trial court should have issued a writ partially decertifying the EIR. Developer's arguments do not track the statutory language or otherwise acknowledge that what is being certified is "the completion of" the EIR. (§§ 21100, subd. (a), 21151, subd. (a).) As a result, we reject Developer's approach because it ignores the statutory text and contradicts the interpretation of sections 21100, 21151 and 21168.9 set forth in *LandValue 77*.

### 4. Partial Decertification is Not Available in This Case

Alternatively, the conflicting statutory interpretations in *LandValue 77* and *Center for Biological Diversity III* regarding partial certification can be considered irrelevant to the present appeal by accepting the way the Second District distinguished *LandValue 77*. The Second District concluded *LandValue 77* "does not prohibit partially setting aside an EIR, so long as a court makes severance findings under section 21168.9, subdivision (b)."[13] (*Center for Biological Diversity III*, *supra*, 17 Cal.App.5th at p. 1254.) The court supported this distinction by noting the rule quoted from Justice Robie's treatise was " ' "[i]n contrast to a case where severance is proper .…" ' " (*Ibid.*) In an unpublished portion of this opinion, we have determined that severance is not proper. Consequently, the Second District's statutory interpretation stating partial decertification is allowed where severance findings have been made does not apply to this case. (See *Center for Biological Diversity III*, *supra*, at p. 1254.) As a result, our conclusion that partial

---

[13]     The court's phrase "partially setting aside an EIR" appears to be shorthand for "partially setting aside the [agency's decision to *certify the completion of*] an EIR." (See §§ 21100, subd. (a), 21151, subd. (a).) Language similar to this shorthand phrase appears in the dispositions described in footnote 2, *ante*.

decertification is inappropriate in this case does not contradict the holding in *Center for Biological Diversity III* because the circumstances of this case are distinguishable.

### 5.      *Application of Statutory Text*

The trial court's writ of mandate, like the disposition in our May 2014 opinion, does not mention the board of supervisor's decision to certify the completion of the EIR. Instead, it directs the County to "not approve the project before preparing a revised EIR .…"  Based on alternate conclusions that (1) partial decertification of the completion of the EIR is not authorized by CEQA or (2) partial decertification of the completion of the EIR is authorized by CEQA only if severance findings allowed a portion of the project approvals to remain in place, we further conclude the writ of mandate did not violate CEQA by failing to include a provision directing County to partially decertify the completion of the EIR.

This conclusion comports with the analysis adopted in *Ione Valley Land, Air, & Water Defense Alliance, LLC v. County of Amador* (2019) 33 Cal.App.5th 165 (*Ione Valley*).  In that case, the CEQA plaintiff argued that "section 21168.9 allows for partial decertification of an EIR, and, therefore, the trial court's order directing full decertification of the EIR allowed new challenges to parts of the EIR that had already been upheld by the trial court." (*Ione Valley, supra,* at p. 172.)  The court rejected this argument about new challenges "because whether the EIR has been decertified does not alter the fact that the sufficiency of a component of the EIR has been litigated and resolved." (*Ibid.*)

In this case, the sufficiency and CEQA compliance of most components of the EIR have been litigated and resolved.  Based on the principle set forth in *Ione Valley*, new challenges to the parts of the EIR that have been upheld are not allowed in proceedings on remand.  Thus, we conclude an order of partial decertification is not necessary to protect Developer from relitigating the CEQA compliance of parts of the EIR not

32.

affected by the errors relating to air quality impacts. Instead, Developer is protected by res judicata, collateral estoppel and the requirement for the exhaustion of administrative remedies. (*Ione Valley*, *supra*, 33 Cal.App.5th at p. 172.) In other words, the arguments presented in this appeal have not convinced us that these protections are inadequate. It follows that we do not reach the issue of whether the concept of partial certification is useful to ameliorate any inadequacies in the protection provided by the principles identified in *Ione Valley*.

## DISPOSITION

The judgment granting petition for writ of mandate is affirmed. Plaintiffs shall recover their costs on appeal.

For purposes of clarity in subsequent proceedings, the superior court is directed to promptly issue an amended peremptory writ compelling County to (1) vacate its decision to approve the Friant Ranch project, which includes the approval of General Plan Amendment No. 511, (2) void its decision to certify the completion of the final EIR, and (3) not approve the project before preparing a revised EIR, circulating the revisions to the EIR, and certifying the completion of the revised EIR. The revised EIR, in accordance with the decision of the California Supreme Court, shall provide an adequate discussion of health and safety problems that will be caused by the rise in various air pollutants resulting from the project's development, which analysis shall reasonably inform the public and the decisionmaking body how anticipated air quality effects will adversely affect human health or, alternatively, shall adequately explain why it is not scientifically feasible at the time of drafting to provide such an analysis. In addition, the revised EIR must either explain the bare conclusion that "mitigation measures will *substantially* reduce air quality impacts related to human activity within the entire Project area" or delete the word "substantially."

The amended peremptory writ of mandate shall state the superior court retains jurisdiction over the proceedings by way of a return to the writ. The superior court may,

33.

in its discretion, require County to file an initial return explaining the action it intends to take to satisfy the writ's requirements.

FRANSON, J.

WE CONCUR:

HILL, P.J.

LEVY, J.